**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|   |   |
|---|---|
| In re: | ) Chapter 11 |
|   | ) |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) Case No. 23-90005 (DRJ) |
|   | ) |
| Debtors. | ) (Joint Administration Requested) |
|   | ) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION
FOR ENTRY OF AN ORDER (I) RESTATING
AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, ANTI-
DISCRIMINATION PROVISIONS, AND *IPSO FACTO* PROTECTIONS
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 3:00 p.m. (prevailing Central Time) on January 18, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on January 18, 2023 at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) restating and enforcing the worldwide automatic stay, anti-discrimination provisions, and *ipso facto* protections of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), (b) approving the form and manner of notice related thereto, substantially in the form attached as Exhibit 2 to the Order (the "Notice"), and (c) granting related relief.

2. The Debtors seek further authority, but not direction, to translate this motion, the Order, and/or the Notice into other languages to better inform creditors, governmental units, and interested parties of the relief requested herein.

### Jurisdiction and Venue

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. § 1408.

5. The statutory bases for the relief requested herein are sections 105(a), 362, 365, 525, and 541 of the Bankruptcy Code, rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

6. On January 17, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

7. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[2]

**The Debtors' Global Supply Network**

8. As described in the First Day Declaration, the Debtors conduct business worldwide and offer party goods to customers in more than 70 countries. The Debtors operate through two primary business lines: retail and consumer products. Through the consumer products business, the Debtors operate manufacturing and distribution facilities in Mexico, have a full-time staff of professionals in Asia (in addition to the United States) dedicated to product safety and quality assurance, source a significant amount of their merchandise from foreign manufacturers and suppliers, and sell a significant amount of merchandise to customers throughout North and Central

---

[2] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

3

America, Europe, the Middle East, and elsewhere. Some of this merchandise, including costumes and other seasonal goods that are critical to the Debtors' businesses, is delivered to the Debtors from manufacturers and suppliers in Asia. The retail business also operates internationally, as the Debtors provide merchandising and other support to franchised stores in Mexico as well as to stores operated by a third party in Canada.

9. As a result, the Debtors have many foreign creditors and counterparties to contracts in various jurisdictions that may not be familiar with the provisions of the Bankruptcy Code. Many of these creditors do not transact business on a regular basis with companies that have filed for chapter 11 and therefore may be unfamiliar with the scope of a debtor in possession's authority under the Bankruptcy Code to conduct its business. These creditors and counterparties may also be unfamiliar with the automatic stay and other provisions of the Bankruptcy Code.

10. As a result, creditors and counterparties may attempt to seize the Debtors' assets located outside of the United States to the detriment of the Debtors, their estates, and creditors, or take other actions in contravention of the automatic stay of section 362 of the Bankruptcy Code. Further, certain of the Debtors' merchandise (including the Asia-based costume sourcing and development business) requires extensive vendor specialization and a long production lead-time because such merchandise is produced according to the Debtors' specifications. Even a temporary halt in production and delivery, therefore, could cause inventory to miss relevant selling seasons. The Debtors would then have to sell such merchandise at steep discounts, negatively affecting the value of the Debtors' estates.

11. Finally, the Debtors are party to certain leases and executory contracts with foreign counterparties who may attempt to terminate those leases or contracts pursuant to *ipso facto* provisions in contravention of sections 362 and 365 of the Bankruptcy Code. Similarly,

governmental units outside of the United States could deny, suspend, terminate, or otherwise place conditions upon certain licenses, permits, charters, or other similar grants held by a chapter 11 debtor and required for the Debtors' ongoing business operations, violating section 525 of the Bankruptcy Code.

12. Accordingly, the Debtors seek the relief requested herein out of an abundance of caution and to assist them in better informing non-U.S. creditors, contract counterparties, and governmental units of the broad protections afforded by the Bankruptcy Code. These include staying, restraining, and enjoining contract counterparties from terminating or modifying any and all contracts and leases to which the Debtors are party or signatory at any time after the commencement of these cases based on contractual provisions conditioned on the (a) insolvency or financial condition of the Debtors or (b) commencement of these cases. Given the nature of their operations, the Debtors need clear and compelling evidence of the protections offered by the Bankruptcy Code so that all entities (as defined in section 101(15) of the Bankruptcy Code) understand that they must continue to perform their obligations under the Debtors' contracts during the postpetition period. For the avoidance of doubt, the Debtors do not seek to expand or enlarge the rights afforded to them under the Bankruptcy Code. Instead, the Debtors seek to affirm those rights and believe that an order from this Court will help guard the Debtors against improper actions taken by, and provide clarity for, non-U.S. parties in interest.

## Basis for Relief

**I. The Requested Relief Is Needed to Better Enforce the Automatic Stay, Anti-Discrimination, and *Ipso Facto* Provisions of the Bankruptcy Code Worldwide**

13. The filing of these chapter 11 cases triggered an automatic stay under section 362 of the Bankruptcy Code that enjoins all entities from, among other things: (a) commencing or continuing any judicial, administrative, or other proceeding against the Debtors that was or could

5

have been commenced before the Petition Date, or recovering upon a claim against any of the Debtors that arose before the commencement of the chapter 11 cases, and (b) taking any action to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the chapter 11 cases.  *See* 11 U.S.C. § 362.  The injunction contained in section 362 is a core protection for debtors, providing them with a "breathing spell from [their] creditors" that is essential to the Debtors' ability to reorganize successfully.  *Browning* v. *Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990).

14.    Given its fundamental importance to a debtor's reorganization, courts have broadly construed the stay provisions of section 362 of the Bankruptcy Code.  *See In re Padilla*, 379 B.R. 643, 662 (Bankr. S.D. Tex. 2007); *In re Cont'l Airlines Corp.*, 50 B.R. 342, 350 (S.D. Tex. 1985), *aff'd*, 790 F.2d 35 (5th Cir. 1986).  The stay has been held to preclude unilateral actions by non-debtor parties to terminate contracts without court order, protecting a debtor's property and contracts wherever located and by whomever held.  *See, e.g.*, *In re Mirant Corp.*, 440 F.3d 238 (5th Cir. 2006) (holding that the non-debtor's termination of an agreement was prohibited by the automatic stay and required bankruptcy court approval under section 362(d)); *Fed. Ins. Co.* v. *Sheldon*, 150 B.R. 314, 319-20 (S.D.N.Y. 1993).

15.    Importantly, courts have recognized the extraterritorial reach of the automatic stay, subjecting violating creditors to sanctions.  *See In re Elcoteq, Inc.*, 521 B.R. 189, 198–99 (Bankr. N.D. Tex. 2014) ("[B]y including property of the debtor 'wherever located' in the bankruptcy estate, Congress explicitly indicated its intent for property located outside the territory of the United States to be considered property of the estate and thus protected by the automatic stay."); *Secs. Inv'r Prot. Corp.* v. *Bernard L. Madoff Inv. Secs. LLC* (*In re Bernard L. Madoff Inv.*

6

*Secs. LLC*), 474 B.R. 76, 82 (S.D.N.Y. 2012) (upholding extraterritorial enforcement of the automatic stay and injunction barring foreign creditor's lawsuit); *Hong Kong & Shanghai Banking Corp.* v. *Simon* (*In re Simon*), 153 F.3d 991, 996 (9th Cir. 1998); *In re Nakash*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996).

16. As a corollary to the protection afforded by the automatic stay, section 365(c)(1) of the Bankruptcy Code invalidates so-called "ipso facto" provisions and prohibits contract counterparties from terminating or modifying their agreements with a debtor because of the debtor's bankruptcy filing or financial condition. *See* 11 U.S.C. § 365(c)(1). Section 365 of the Bankruptcy Code also states that any third-party actions to enforce the terms of a contract against the Debtors are prohibited absent court approval. *See NLRB* v. *Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984). Third parties must thus continue to perform under executory contracts until these contracts are assumed or rejected. *See Lauter* v. *Citgo Petroleum Corp.*, 2018 WL 801601, at *14 (S.D. Tex. 2018) ("Between the date a bankruptcy petition is filed and an executory contract is assumed or rejected under section 365(a), the contract continues to exist, enforceable by the debtor, but not against the debtor."); *see also In re Gunter Hotel Assocs.*, 96 B.R. 696, 700 (Bankr. W.D. Tex. 1988) ("[A]n executory contract under chapter 11 is not enforceable against the debtor party, but is enforceable against the nondebtor party prior to the debtor's assumption or rejection of the contract."); *In re Mirant Corp.*, 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("[E]ven if a contract is not property of the estate until assumption, a debtor has rights under the contract which *are* property of the estate and so are protected by the automatic stay from actions of other parties.") (emphasis in original); *In re El Paso Refinery, L.P.*, 196 B.R. 58, 71-72 (Bankr. W.D. Tex. 1996) ("Pending the debtor's assumption or rejection of an assumable executory contract, the non-debtor is bound by the contract's terms.").

17. Section 525 of the Bankruptcy Code, in turn, prohibits governmental units from, among other things, denying, revoking, suspending, or refusing to renew licenses, permits, charters, franchises, or other similar grants held by a chapter 11 debtor on the basis that the debtor has failed to pay a dischargeable debt, commenced a chapter 11 case, or was insolvent prior to the commencement of such case. *See* 11 U.S.C. § 525(a); *see also In re Exquisito Servs., Inc.*, 823 F.2d 151, 155 (5th Cir. 1987) ("[T]he impetus behind section 525(a) is to prevent governmental units from frustrating the policies of the Bankruptcy Code by discriminating against persons seeking relief under that Code."). In addition, all interests of a debtor in property held as of the commencement of a chapter 11 case become property of the estate and any restrictions or conditions on the transfer of such interests are unenforceable. *See* 11 U.S.C. § 541(c)(1).

18. The application of the protections afforded a debtor by sections 362, 365, 525, and 541 of the Bankruptcy Code is automatic upon the filing of a chapter 11 petition. *See* 11 U.S.C. § 362(a)(3) ("[A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of, [among other things,] any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."); 11 U.S.C. § 365(c)(1) ("[A]ny right or obligation under [an executory contract or unexpired lease of the debtor] may not be terminated or modified, at any time after the commencement of the case solely because" of an *ipso facto* provision); 11 U.S.C. § 525(a) ("[A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against [. . .] a person that is or has been a debtor under this title."); 11 U.S.C. § 541(c)(1) ("[A]n interest of the debtor in property becomes property of the estate . . . notwithstanding" any restrictions or conditions).

**II.     The Requested Relief Should Be Granted Under Section 105(a) of the Bankruptcy Code**

19.     Notwithstanding the self-executing and global nature of sections 362, 365, 525, and 541 of the Bankruptcy Code, not all parties affected or potentially affected by the commencement of these chapter 11 cases are aware of these statutory provisions or their significance and impact. Experience has shown that it is often necessary to advise third parties of the existence, reach, and effects of these sections of the Bankruptcy Code, especially where the debtors' businesses and operations are international, as is the case here. In certain circumstances, a chapter 11 debtor may be forced to initiate proceedings in the bankruptcy court to enforce these protections. To avoid such unnecessary actions, and in an effort to provide notice to parties unfamiliar with the Bankruptcy Code of the existence, scope, and effect of these provisions, it is prudent to obtain an order confirming and reinforcing the relevant sections of the Bankruptcy Code.

20.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code therefore authorizes bankruptcy courts to issue injunctions and take other necessary steps in aid of their jurisdiction. *See, e.g.*, *United States* v. *Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986); *In re Rojas*, 2009 WL 2496807, at *7 (Bankr. S.D. Tex. Aug. 12, 2009).

21.     Even though an order of the sort sought by this motion is not necessary to trigger the protections afforded the Debtors by sections 362, 365, 525, and 541 of the Bankruptcy Code, given the Debtors' substantial global operations, the entry of the requested Order is necessary to explain the scope of such protections to customers, supply-chain participants, and other stakeholders, particularly those located in foreign jurisdictions. The requested relief will facilitate the Debtors' stabilization of their businesses in chapter 11. Moreover, entry of the Order may

9

prevent unintentional violations of the Bankruptcy Code and may obviate the need for time-consuming and expensive enforcement proceedings.

**Emergency Consideration**

22. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of the chapter 11 cases "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

**Reservation of Rights**

23. Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under

the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

24.     The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as Prepetition ABL Agent, and counsel thereto, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017; (d) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, NY 10017; (e) Ankura Trust Company, LLC, as First Lien Notes Trustee, 140 Sherman St., 4th Fl., Fairfield, CT 06824; (f) Wilmington Trust, National Association, as Unsecured Notes Trustee, 246 Goose Ln., Ste. 105, Guilford, CT 06437; (g) counsel to the Ad Hoc Group of Anagram Noteholders, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (h) Ankura Trust Company, LLC, as agent under the DIP Facility, 140 Sherman St., 4th Fl., Fairfield, CT 06824, and counsel thereto, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) other regulatory agencies having a regulatory or statutory interest in these cases; and

(n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

January 18, 2023

Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (pending *pro hac vice*)
Kenneth S. Ziman (pending *pro hac vice*)
Michael M. Turkel (pending *pro hac vice*)
Grace C. Hotz (pending *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
kziman@paulweiss.com
mturkel@paulweiss.com
ghotz@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**Certificate of Accuracy**

      I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.  This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                  */s/ John F. Higgins*
                                                  John F. Higgins

**Certificate of Service**

      I certify that on January 18, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  */s/ John F. Higgins*
                                                  John F. Higgins