**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) ) ) | Case No. 23-90005 (DRJ) |
| Debtors. | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF
PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
(III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADDITIONAL ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 3:00 p.m. (prevailing Central Time) on January 18, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January 18, 2023 at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) approving the proposed adequate assurance of payment for future utility services, (b) prohibiting utility providers from altering, refusing, or discontinuing utility services, (c) establishing procedures for determining adequate assurance of payment, and (d) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The statutory bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### Background

5. On January 17, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and

managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[2]

## The Utility Services and Proposed Adequate Assurance

**I.      Utility Services and Utility Providers**

7. In connection with the operation of their businesses, the Debtors obtain electricity, natural gas, water and sewage, irrigation, trash and recycling, telephone (including landline and cellular service), internet, closed-circuit television ("CCTV"), security, alarm system, and other similar services (collectively, the "Utility Services") from various utility providers either directly or through applicable brokerage agreements and/or real property leases (collectively, the "Utility Providers"). A non-exhaustive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Service List") is attached hereto as Exhibit A.[3]

---

[2]   Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

[3]   Although the Debtors believe that the Utility Service List includes all of their Utility Providers, the Debtors reserve the right to supplement the list if they have inadvertently omitted any Utility Providers. Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in

8. Pursuant to the leases to which the Debtors are party, certain Utility Services are billed directly to certain of the Debtors' landlords (the "Landlords"). The cost of these Utility Services is passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements with the Landlords. The relief requested herein is requested with respect to all Utility Providers supplying the Utility Services to the Debtors.[4]

9. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations, and hence the overall success of these chapter 11 cases. As of the Petition Date, the Debtors' business includes over 700 retail locations, three distribution centers, and seven manufacturing facilities. These locations require electricity, telephone and internet services, heat, water, and waste management, among other Utility Services, to operate. If any Utility Provider were to refuse or discontinue service to the Debtors, even for a brief period, it could potentially disrupt the Debtors' business operations and safety procedures, as well as jeopardize the Debtors' efforts to reorganize. Accordingly, it is essential that the Utility Services continue uninterrupted during these chapter 11 cases.

10. To the best of the Debtors' knowledge, they are not in default of any undisputed invoices for prepetition Utility Services, and none of the Utility Providers hold deposits from the Debtors, nor do the Debtors hold any funds allocated for existing prepayments due with respect to any Utility Providers. On average, the Debtors pay approximately $3,483,886.26 each month for the Utility Services, as calculated for the 12-month period ended December 31, 2022.

---

the future. The Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on the Utility Service List.

[4] The Debtors respectfully submit that the Landlords be required to continue paying for the Utility Services in the ordinary course until the effective date of a rejection of the applicable lease agreement, if any, pursuant to section 365 of the Bankruptcy Code, notwithstanding any current or future nonpayment, deferral, waiver, or other compromise of rent.

4

**II.     Proposed Adequate Assurance of Payment**

11.     The Debtors intend to pay all undisputed postpetition charges owed to Utility Providers in the ordinary course of business and in a timely manner. Moreover, the Debtors expect that their available cash will be more than sufficient to pay for the Debtors' postpetition use of the Utility Services.

12.     To provide the Utility Providers with additional assurance of payment pursuant to section 366 of the Bankruptcy Code, the Debtors propose to deposit $1,791,943.13 (the "Adequate Assurance Deposit") into a segregated bank account (the "Adequate Assurance Account") within 20 days of entry of the Order. The Adequate Assurance Deposit is equal to approximately one-half of the Debtors' average monthly cost of Utility Services, calculated based on the Debtors' average third-party utility expenses of the 12-month period ended December 31, 2022, plus an additional $50,000 to account for any unidentified Utility Providers (as further described below). The Debtors will hold the Adequate Assurance Deposit in the Adequate Assurance Account for the duration of the chapter 11 cases, and the deposit may be applied to any postpetition defaults in payment to the Utility Providers. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' cash flow from operations and cash on hand, demonstrates their ability to pay for future Utility Services in accordance with prepetition practice (collectively, the "Adequate Assurance") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

13.     The Debtors further request that the Adequate Assurance Deposit be automatically available to the Debtors, without further Court order, upon the effective date of any chapter 11 plan confirmed in these chapter 11 cases. Additionally, if the Debtors terminate any of the Utility Services provided by any Utility Provider or reject any leases with the Landlords, the Debtors request that they be permitted to immediately reduce the Adequate Assurance Deposit to reflect

the termination of such Utility Service (including under any terminated lease), without further Court order.

### III. Proposed Adequate Assurance Procedures

14. Any Utility Provider that is not satisfied with the proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an "Adequate Assurance Request") pursuant to the procedures (the "Adequate Assurance Procedures") set forth below:

   a. The Debtors will serve a copy of this motion and the Order on the Utility Providers on the Utility Service List within five (5) business days after entry of the Order.

   b. Subject to entry of the Order, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $1,791,943.13, in the Adequate Assurance Account within 20 days after entry of the Order.

   c. Each Utility Provider will be entitled to funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Proposed Adequate Assurance" on the Utility Service List, subject to such Utility Provider's compliance with these procedures.

   d. If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to (i) the Debtors, Attn: Ian Heller (iheller@partycity.com); (ii) the Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002; (iii) proposed counsel to the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Michael Turkel (mturkel@paulweiss.com; (212) 373-3689) and Grace C. Hotz (ghotz@paulweiss.com; (212) 373-3539); and (iv) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Adam L. Shpeen (adam.shpeen@davispolk.com; (212) 450-4169) and Jonah A. Peppiatt (jonah.peppiatt@davispolk.com; (212) 450-3305) (collectively, the "Utility Notice Parties"). The Debtors will honor such request within 20 days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Provider receives a disbursement from the Adequate Assurance

6

    Account, the Debtors will replenish the Adequate Assurance Account in the amount so disbursed.

e. The portion of the Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

f. Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve an Adequate Assurance Request on the Utility Notice Parties within 21 days after the Petition Date.

g. The Adequate Assurance Request must (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), and the outstanding balance for each such account; (iii) explain why the Utility Provider believes the Adequate Assurance is not adequate assurance of payment; (iv) summarize the Debtors' payment history related to the affected account(s); and (v) certify the amount that is equal to two weeks of the Utility Services provided by the Utility Provider to the Debtors, calculated as a historical average over the 12-month period preceding the Petition Date.

h. Unless and until a Utility Provider files and serves an Adequate Assurance Request in accordance with the Adequate Assurance Procedures, the Utility Provider will be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the proposed Adequate Assurance.

i. The Debtors may, without further order from the Court, resolve an Adequate Assurance Request by mutual agreement with a Utility Provider, and the Debtors may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of payment including cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

j. If the Debtors and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Adequate Assurance Request, the Debtors will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

      k. Pending resolution of the Determination Hearing, the Utility Provider filing such Adequate Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the proposed Adequate Assurance.

## IV. Subsequent Modifications to Utility Service List

15. The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Service List.[5] To the extent the Debtors subsequently identify additional Utility Providers or discontinue Utility Services, the Debtors seek authority, in their sole discretion, to amend the Utility Service List to add or remove any Utility Provider. To the extent the Debtors identify additional Utility Providers, the Debtors shall promptly file serve copies of the order granting this motion on any newly identified Utility Providers. Moreover, the Debtors will increase the amount of the Adequate Assurance Deposit by an amount equal to approximately one-half of one month of the Debtors' average monthly cost of Utility Services to account for any newly identified Utility Providers. In addition to the amounts scheduled, the Debtors shall deposit an additional $50,000 into the Adequate Assurance Account to provide Adequate Assurance to any unidentified Utility Provider. If an unidentified Utility Company is subsequently identified, the procedures in the Order will apply; pending completion of the procedures, the $50,000 will serve as Adequate Assurance. The Debtors request that all Utility Providers, including subsequently added Utility Providers to the Utility Service List, be prohibited from altering, refusing, or discontinuing any Utility Services to the Debtors absent further order of the Court.

---

[5] To their best efforts, the Debtors have included every known account number for each Utility Provider on the Utility Service List. Upon notice or discovery of additional account numbers, the Debtors will promptly modify the Utility Service List accordingly. Out of an abundance of caution, the Debtors calculated the Adequate Assurance Deposit on a provider basis to account for each Utility Company's payment history, even if a specific account number is not listed on the Utility Service List.

**Basis for Relief**

16.  Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date.  *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty (30) days of the petition, or the utility company may alter, refuse, or discontinue service.  11 U.S.C. § 366(c)(2).  Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples of what constitutes "assurance of payment."  Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtors' ability to pay.  *See In re Cont'l Common, Inc.*, No. 3:10–CV–2591–O, 2011 WL 13238210, at *5 (N.D. Tex. Feb. 14, 2011) (the statute "requires a determination that a utility is not subject to unreasonable risk of nonpayment, but does not require a guarantee of payment"); *see also In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2, n.1 (Bankr. S.D. Tex. July 21, 2008) ("[A] debtor may continue to pay a utility, and a utility may continue to provide service, in the absence of an injunction preventing the utility from terminating service." (citing *In re Viking Offshore (USA) Inc.*, No. 08-31219-H3-11, 2008 WL 782449, at *3, n.3 (Bankr. S.D. Tex. Mar. 20, 2008))); *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment.  The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co.* v. *Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997).

17.  When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the

9

Utility Provider will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").

18.     The relief requested in this motion will ensure the continuation of the Debtors' businesses at this critical juncture as they transition into chapter 11. The Adequate Assurance Procedures also provide the Utility Providers with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by Utility Providers in a disorganized manner when the Debtors' efforts should be more productively focused on continuing to operate and restructure their business for the benefit of all parties in interest.

**I.     The Proposed Adequate Assurance Is Sufficient**

19.     Termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *In re Pilgrim's Pride Corp.*, No. 08-45664, 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321-22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors

10

"would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtors have a history of paying all utility bills on time and in the ordinary course. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers.

20. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g., In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "[t]he plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*.

21. Here, notwithstanding a determination that the proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are preserved under the Adequate Assurance Procedures. *See id*. at *5-6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the proposed Adequate Assurance. *See id*. at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id*. at *5. The Adequate Assurance Procedures are reasonable and in accord with

the objectives of section 366 of the Bankruptcy Code, and thus the Debtors respectfully request that the Court grant the relief requested herein.

22. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the proposed Adequate Assurance.

23. The Adequate Assurance Procedures set forth a streamlined process for the Utility Providers to address potential concerns with respect to the proposed Adequate Assurance, while at the same time allowing the Debtors to continue their business operations uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the proposed Adequate Assurance by filing and serving an Adequate Assurance Request upon certain notice parties. The Debtors, in their discretion, may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of this Court. If the Debtors determine that the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors will seek Court resolution of the Adequate Assurance Request. Moreover, unless and until a Utility Provider files and serves an Adequate Assurance Request in accordance with the Adequate Assurance Procedures, such Utility Provider shall be (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code and (b) forbidden from discontinuing, altering, or refusing services

to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the proposed Adequate Assurance.

### The Court Should Authorize the Debtors' Financial Institutions to Honor and Process the Debtors' Payments

24. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, anticipated access to cash collateral, and proceeds of the DIP Facility. Additionally, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### Emergency Consideration

25. Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

26. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

27. Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

28. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as Prepetition ABL Agent, and counsel thereto, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017; (d) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, NY 10017; (e) Ankura Trust Company, LLC, as First Lien Notes Trustee, 140 Sherman St., 4th Fl., Fairfield, CT 06824; (f) Wilmington Trust, National Association, as Unsecured Notes Trustee, 246 Goose Ln., Ste. 105, Guilford, CT 06437; (g) counsel to the Ad Hoc Group of Anagram Noteholders, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (h) Ankura Trust Company, LLC, as agent under the DIP Facility, 140 Sherman St., 4th Fl., Fairfield, CT 06824, and counsel thereto, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) other regulatory agencies having a regulatory or statutory interest in these cases; (n) the Utility Providers; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

January 18, 2023                              Respectfully submitted,

By: /s/ John F. Higgins
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (pending *pro hac vice*)
Kenneth S. Ziman (pending *pro hac vice*)
Michael M. Turkel (pending *pro hac vice*)
Grace C. Hotz (pending *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
kziman@paulweiss.com
mturkel@paulweiss.com
ghotz@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ John F. Higgins*
John F. Higgins

**Certificate of Service**

I certify that on January 18, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins