IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 23-90005 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE PAYMENT OF
CERTAIN TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 3:00 p.m. (prevailing Central Time) on January 18, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on January 18, 2023 at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order") (a) authorizing, but not directing, the Debtors to remit or pay (or use tax credits to offset or otherwise satisfy) all Taxes and Fees (as defined herein) due and owing to various federal, state, local, and other applicable Authorities (as defined herein) that arose prior to the Petition Date (as defined herein) (including any Assessment (as defined herein) determined by Audit (as defined herein) or otherwise to be owed for periods prior to the Petition Date), and to pay all Taxes and Fees due and owing to various federal, state, local, and other applicable Authorities that arose after the Petition Date (including any Assessment subsequently determined by Audit or otherwise to be owed for periods after the Petition Date) and (b) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

5. On January 17, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[2]

**I.   Taxes and Fees Overview**

7. In the ordinary course of business, the Debtors collect, incur, remit, withhold, and pay taxes, fees, and assessments in approximately 50 jurisdictions worldwide related to, among other taxes, sales and use, property, income, customs and import duties, operations, third-party

---

[2] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

3

services, permitting, repatriation, employees,[3] value added tax and similar foreign jurisdiction transaction-based taxes, and various other governmental charges, fees, and assessments (collectively, "Taxes and Fees").

8. The Debtors pay and remit, as applicable, Taxes and Fees on a periodic basis, typically remitting them monthly, quarterly, semi-annually, annually, or on other terms to the federal government, various state and local governments, and other applicable taxing authorities and related inspectors, vendors, and agents (collectively, the "Authorities"), depending on the nature and incurrence of a particular Tax or Fee and as required by applicable laws and regulations. A schedule identifying the Authorities is attached hereto as Exhibit A.[4] Taxes and Fees typically (but not exclusively) are remitted and paid by the Debtors through checks and electronic transfers that are processed through their banks and other financial institutions or service providers. From time to time, the Debtors also receive tax credits for overpayments or refunds in respect of Taxes or Fees. The Debtors use these credits in the ordinary course of business to offset against future Taxes or Fees, or for other general corporate purposes, or have the amount of such credits refunded to the Debtors.

9. The Debtors estimate that approximately $26,080,000 in Taxes and Fees relating to the prepetition period have accrued and may become due and owing (or arise in connection

---

[3] Other than with respect to any potential unknown Audits or Assessments, the Debtors do not seek authority to pay prepetition amounts related to employment taxes and payroll withholding taxes under this motion, but rather request such authority as part of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* which has been filed substantially contemporaneously herewith.

[4] Although Exhibit A is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from Exhibit A. The Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on Exhibit A.

with a collateral or bond posting obligation) in the ordinary course of business as set forth in more detail as follows:

| Category[5] | Description | Approximate Amount Accrued and Unpaid as of Petition Date |
|---|---|---|
| Income Taxes | Taxes imposed on the Debtors' income ("Income Taxes") | $630,000[6] |
| Sales and Use Taxes | Taxes on goods or services that are used/consumed or sold and assessed based on the value of those goods and services ("Sales and Use Taxes") | $18,700,000 |
| Property Taxes | Taxes related to personal property that the Debtors own and use in the operation of their business ("Property Taxes") | $2,850,000 |
| Other Taxes and Fees | Miscellaneous taxes, interest, Assessments, and fees related to business operations, such as licensing, permitting, excise, and repatriation taxes ("Other Taxes and Fees") | $3,900,000 |
| | Total: | $26,080,000 |

## II. Income Taxes

10. In the ordinary course of business, the Debtors incur Income Taxes. These include taxes on profits for federal, state, and local authorities. The Debtors typically pay Income Taxes on a monthly, quarterly, semi-annual, or annual basis, depending on the nature and incurrence of the particular Income Taxes as required by applicable laws and regulations. Additionally, in certain jurisdictions, customers are required to withhold and remit Income Taxes

---

[5] In certain cases, the approximate amount of Taxes and Fees is based on current exchange rates and may be subject to change based on fluctuations in exchange rates.

[6] Amount represents expected income tax liability, exclusive of expected tax receivables owed to the Debtors. Additionally, as of the Petition Date, the Debtors estimate that they owe approximately $4,205,302 in accrued and unpaid transition taxes (the "Transition Taxes"), as defined in section 965 of the Internal Revenue Code. However, the Debtors pay such taxes in annual installments and do not expect any payments to become due and owing during the duration of these chapter 11 cases. However, the Transition Taxes may become immediately due and owing as of the Petition Date if the Debtors sell substantially all of their assets. In the event of such a sale, the Debtors may seek separate approval from this Court to pay the Transition Taxes.

to the relevant Authority on behalf of the Debtors. In other jurisdictions the Debtors remit estimated amounts in respect of Income Taxes, resulting in tax credits or overpayments which may be setoff against future Income Taxes, or in certain circumstances may be refunded to the Debtors or non-Debtor affiliates.

11. In fiscal year 2021, the Debtors had Income Tax expense totaling approximately $5,708,000. As of the Petition Date, the Debtors estimate that they may owe approximately $630,000 to the relevant Authorities on account of prepetition Income Taxes which will become due and owing following the Petition Date, exclusive of tax receivables owed to the Debtors.

### III. Sales and Use Taxes

12. The Debtors and their non-Debtor affiliates operate an international business in countries and regions around the world. In connection with such operations, the Debtors incur, collect, and remit Sales and Use Taxes. Sales and Use Taxes essentially are general consumption taxes charged at either the point of purchase for goods and services or the point of sale of goods and services, which are usually set by an Authority as a percentage of the retail price of the good or service purchased or sold. The process by which the Debtors remit Sales and Use Taxes varies depending on the Authority. Generally, the Debtors remit Sales and Use Taxes on a monthly, quarterly, semi-annual, or annual basis, depending on the nature and incurrence of the particular Sales and Use Taxes as required by applicable laws and regulations.

13. In fiscal year 2021, the Debtors incurred approximately $109,319,306 in the aggregate to various Authorities on account of Sales and Use Taxes. As of the Petition Date, the Debtors estimate that approximately $18,700,000 in prepetition Sales and Use Taxes will have accrued and remain unpaid to the relevant Authorities, which will become due and owing following the Petition Date.

**IV.     Property Taxes**

14.     The Debtors remit Property Taxes directly to the Authorities relating to personal property that the Debtors own and use in the operation of their business. In addition, the Debtors also lease properties where their stores are operated, and their leases provide that the Debtors will remit applicable Property Taxes to the landlords (with the landlords, in turn, remitting Property Taxes to the applicable Authority). The timeline for paying Property Taxes depends on the nature and incurrence of the particular Property Tax as required by applicable laws and regulations.

15.     In fiscal year 2021, the Debtors paid approximately $3,655,758 in Property Taxes. As of the Petition Date, the Debtors owe approximately $2,850,000 on account of prepetition Property Taxes, which will become due and owing following the Petition Date.

**V.     Other Taxes and Fees**

16.     The Debtors incur Other Taxes and Fees in the ordinary course of business. The Debtors typically remit Other Taxes and Fees to the relevant Authorities or customs agents on a monthly, quarterly, semi-annual, or annual basis, depending on the nature and incurrence of the particular Other Taxes and Fees as required by applicable laws and regulations.

17.     In fiscal year 2021, the Debtors paid approximately $554,984 in Other Taxes and Fees. As of the Petition Date, the Debtors estimate that approximately $3,900,000 in prepetition Other Taxes and Fees will have accrued and remain unpaid to the relevant Authorities or customs agents, which will become due and owing following the Petition Date.

**VI.     Audits**

18.     The Debtors are also currently subject to ongoing audit investigations and may be subject to further investigations on account of tax returns and/or obligations from current or prior

years (collectively, the "Audits").  The Audits may result in the imposition of additional prepetition Taxes and Fees being assessed against the Debtors, including interest on late payment of taxes, penalties, and fees (such additional Taxes and Fees, collectively, "Assessments").  In addition, there may be Assessments that have already been made but are being contested in appropriate judicial or administrative proceedings, as well as amounts that may need to be posted as collateral to contest asserted Assessment amounts.  Taxes and Fees relating to the prepetition period may become due and owing as a result of such Audits and Assessments, including in connection with settlements with the applicable Authority, after the Petition Date.  Nothing in this motion or any related order constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment.  The Debtors expressly reserve all rights with respect to any Audit.  Furthermore, the Debtors reserve the right to contest any Assessment claimed to be due as a result of the Audits.

19. As of the Petition Date, the Debtors estimate that approximately $2,300,000 in prepetition Assessments will have accrued and remain unpaid to the relevant Authorities, which will become due and owing following the Petition Date.  For the avoidance of doubt, the amounts related to Assessments are incorporated in the amounts owed by the Debtors on account of Other Taxes and Fees.

**Basis for Relief**

I. **Certain Taxes and Fees May Not Be Property of the Debtors' Estates**

20. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable

interest in such property that the debtor does not hold." Certain Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.*, *Begier* v. *Internal Revenue Serv.*, 496 U.S. 53, 57–60 (1990) (holding that certain taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (finding that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro* v. *N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same). Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[7]

## II. Certain Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code

21. Claims for certain Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and

---

[7] For the avoidance of doubt, the Debtors hereby request authority to pay Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

recoveries of junior creditors. Payment of such Taxes and Fees likely will give Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan of reorganization and will save the Debtors the potential interest expense, legal expense, penalties, and other fees that might otherwise accrue on Taxes and Fees during these chapter 11 cases.

### III. Payment of Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment

22. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In such circumstances, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) (quotation omitted); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (courts require only that the debtor "show that a sound business purpose justifies such actions").

23. "The business judgment standard in section 363 is flexible and encourages discretion." *ASARCO, L.L.C.*, 650 F.3d at 601; *see also In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

24. This standard is satisfied here. The Debtors seek to pay the Taxes and Fees to, among other things, prevent the Authorities from taking actions that may interfere with the Debtors' continued business operations. Nonpayment of these obligations may cause Authorities to take precipitous action including, but not limited to, asserting liens or seeking to lift the automatic stay, imposing civil and/or criminal penalties, or modifying, suspending, or revoking licenses that are necessary to the Debtors' continued operations. Such actions could materially disrupt the Debtors' day-to-day operations and impose significant costs on the Debtors' estates. Failure to satisfy certain of the prepetition Taxes or Fees may jeopardize the Debtors' maintenance of good standing to operate in the jurisdictions in which they do business.

25. The Debtors' ability to pay Taxes and Fees is critical to their continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting such key personnel from the administration of these chapter 11 cases. *See, e.g.*, *Schmehl* v. *Helton*, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes); *In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States* v. *Energy Res. Co.*, 495 U.S. 545, 547 (1990)). Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued

operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

26. Furthermore, the Debtors' liability to pay Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest, penalties, and other fees accrue on Taxes and Fees, which amounts also may be entitled to priority treatment. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest, penalties, and fees. The Debtors' failure to pay the prepetition Taxes and Fees as they come due thus may ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors and other stakeholders. Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

27. Moreover, under section 105(a) of the Bankruptcy Code and the "doctrine of necessity," the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtors' business. *See, e.g.*, *In re Just For Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court . . . recognize[s] the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *see also In re CEI Roofing, Inc.*, 315

B.R. 50, 56, 60–61 (Bankr. N.D. Tex. 2004) (holding that payment of certain prepetition claims under the doctrine of necessity is "based on both common sense and the express provisions of the Bankruptcy Code"); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2004) (authorizing the debtors to pay certain prepetition claims because "[t]he court d[id] not wish [the] Debtors' businesses seriously damaged"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11—to facilitate the continued operation and rehabilitation of the debtor. *See Just For Feet, Inc.*, 242 B.R. at 825.

28. Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating that in certain situations, a debtor's fiduciary duty to maximize estate value for all parties can only be satisfied through the payment of a prepetition claim); *In re CEI Roofing Inc.*, 315 B.R. at 50, 59 (recognizing the permissibility of paying prepetition obligations, particularly where all sophisticated parties are in agreement); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

29. In addition, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ, L.L.C.*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.*

30. Here, unless the Debtors are permitted to pay Taxes and Fees arising in connection with the operation of their businesses, the Debtors risk Authorities attempting to suspend the Debtors' operations, file liens, seek to lift the automatic stay, impose liability on the Debtors' officers and directors, or pursue other remedies that could cause material harm to the Debtors' estates. The doctrine of necessity is intended to prevent these harms and supports the relief requested herein.

### The Court Should Authorize the Debtors' Financial Institutions to Honor and Process the Debtors' Payments on Account of Taxes and Fees

31. The Debtors have sufficient funds to pay the amounts described herein by virtue of expected cash flows from ongoing business operations, anticipated access to cash collateral, and proceeds of the DIP Facility. Additionally, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### Emergency Consideration

32. Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion. An immediate and orderly

14

transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

33. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

34. Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the

15

relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

35.     The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as Prepetition ABL Agent, and counsel thereto, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017; (d) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, NY 10017; (e) Ankura Trust Company, LLC, as First Lien Notes Trustee, 140 Sherman St., 4th Fl., Fairfield, CT 06824; (f) Wilmington Trust, National Association, as Unsecured Notes Trustee, 246 Goose Ln., Ste. 105, Guilford, CT 06437; (g) counsel to the Ad Hoc Group of Anagram Noteholders, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (h) Ankura Trust Company, LLC, as agent under the DIP Facility, 140 Sherman St., 4th Fl., Fairfield, CT 06824, and counsel thereto, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) other regulatory agencies having a regulatory or statutory interest in these cases; and (n) any party that has requested notice

pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

January 18, 2023

Respectfully submitted,

By: /s/ John F. Higgins
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (pending *pro hac vice*)
Kenneth S. Ziman (pending *pro hac vice*)
Michael M. Turkel (pending *pro hac vice*)
Grace C. Hotz (pending *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
kziman@paulweiss.com
mturkel@paulweiss.com
ghotz@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ John F. Higgins*
John F. Higgins

**Certificate of Service**

I certify that on January 18, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins