## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 23-90005 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF INTERIM AND FINAL
## ORDERS (I) ESTABLISHING NOTIFICATION
## AND HEARING PROCEDURES FOR CERTAIN
## TRANSFERS OF AND DECLARATIONS OF WORTHLESSNESS
## WITH RESPECT TO COMMON STOCK OF PARTY CITY HOLDCO
## INC. AND CLAIMS AGAINST DEBTORS (II) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested not later than 3:00 p.m. (prevailing Central Time) on January 18, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January 18, 2023 at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659).  The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

### Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto (respectively, the "Interim Order" and the "Final Order"), (a) approving (i) notification and hearing procedures related to certain transfers of, or declarations of worthlessness with respect to, Party City Holdco Inc.'s existing common stock or any Beneficial Ownership[2] therein (any such record or Beneficial Ownership, the "Common Stock")[3] and (ii) certain notification, hearing, and sell down procedures related to claims (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors ("Claims"), in each case, as detailed in Exhibit 1 to each of the Interim Order and the Final Order (collectively, the "Procedures"); (b) directing that any purchase, sale, other transfer of, or declaration of worthlessness with respect to Beneficial Ownership of Common Stock, or any purchase, sale, or other transfer of Claims in violation of the Procedures shall be null and void *ab initio*; and (c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing

---

[2]   "Beneficial Ownership" will be determined in accordance with the applicable rules of section 382 of the Internal Revenue Code (the "IRC"), and the Treasury Regulations thereunder (the "Treasury Regulations") (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)) and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) to the extent set forth in Treasury Regulations section 1.382-4, a holder would be considered to beneficially own equity securities that such holder has an Option (as defined herein) to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

[3]   For the avoidance of doubt, the definition of Common Stock shall not include record or Beneficial Ownership in any securities to be issued in connection with a chapter 11 plan of reorganization of the Debtors.

within approximately 30 days of the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this motion on a final basis.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1408.

4.      The statutory bases for the relief requested herein are sections 362 and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### Background

5.      On January 17, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed substantially contemporaneously herewith and incorporated herein by reference.[4]

### The Tax Attributes

7.      Generally, a company generates net operating losses ("<u>NOLs</u>") if the operating expenses it has incurred exceed the revenues it has earned during a single tax year.  A company may apply, or "carry forward," NOLs to reduce future tax payments in a tax year or years after the year in which the NOLs were generated (subject to certain conditions as discussed below). IRC § 172.  In addition, business interest expense in excess of certain thresholds is disallowed as a deduction but may generally be carried forward and deducted in future tax years (subject to certain conditions).  IRC § 163(j).  Similar rules apply with respect to other tax attributes.  IRC § 39.

8.      The Debtors estimate that, as of the end of their 2022 tax year, they had federal NOL carryovers in the amount of approximately $45 million and federal disallowed business interest expense carryforwards of approximately $209 million (collectively, with the NOL carryovers, the disallowed business interest carryforwards, and certain other tax attributes, "<u>Tax Attributes</u>"), and may incur additional NOL carryovers and disallowed business interest expense carryforwards through 2022 and 2023.  These Tax Attributes provide the potential for material future tax savings or other tax structuring possibilities in these chapter 11 cases.  The Tax Attributes may be of significant value to the Debtors and their estates because the Debtors can

---

[4]     Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

generally carry forward their Tax Attributes to offset their future taxable income, thereby reducing their future aggregate tax obligations.  In addition, such Tax Attributes may generally be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases.  The value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

**I.    An "Ownership Change" May Negatively Impact the Debtors' Utilization of the Tax Attributes**

9.      Sections 382 and 383 of the IRC limit the amount of certain Tax Attributes that a corporation can use to offset its taxable income if the corporation undergoes an "ownership change."[5]  Pursuant to section 382 of the IRC, generally, an "ownership change" occurs when the percentage, by value, of a corporation's equity held or beneficially owned by one or more persons holding five percent or more of the stock (in certain cases, taking into account Options to acquire such stock) has increased by more than 50 percentage points over the lowest percentage of equity owned by such shareholders at any time during the preceding three-year period or since the last ownership change (an "Ownership Change").

10.     An Ownership Change can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder."  A 50-percent shareholder is any person (or group of people that is treated as a single entity under the applicable rules) that owned 50% or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed.  IRC § 382(g)(4)(D).  If the 50-percent shareholder still owns the corporation's stock at the end of the taxable year, sections 382 and 383 of the IRC essentially treat the person as newly purchasing the stock on the first day

---

5       As discussed in further detail below, upon an "ownership change," section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits."  IRC §§ 382(a), 383(a).

of the next taxable year.  For example, if a person with 50.1% of a corporation's stock claims a worthless stock deduction on its tax return for 2022 but does not sell such stock that year, that person is treated as (a) not having owned the stock at the end of 2022 and (b) having purchased the stock on January 1, 2023.  That deemed purchase would cause an ownership change in 2023, because the 50-percent shareholder would be deemed to have a more than 50 percentage point increase in its stock ownership.  Notably, while the seminal case of *Official Comm. Of Unsecured Creditors* v. *PSS S.S. Co., Inc.* (*In re Prudential Lines, Inc.*), 928 F.2d 565 (2d Cir. 1991), is generally relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

11.    If an Ownership Change occurs, section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses," and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all stock of the corporation immediately prior to the Ownership Change multiplied by the long-term tax-exempt rate that applies to the month of the Ownership Change.[6]  IRC §§ 382(b), 383(a).  Pre-change losses and excess credits subject to limitation under section 382 and 383 of the IRC include the Debtors' NOLs, certain other Tax Attributes, and any net unrealized built-in loss (as defined in section 382(h)(3) of the IRC).  Certain tax losses arising upon the disposition of assets after an ownership change occurs can be subject to section 382 limitations if the corporation has "net unrealized built-in losses."

12.    Once a Tax Attribute is limited under section 382 or 383 of the IRC, its use is limited forever.  Thus, certain transfers of Common Stock effected before the effective date of

---

[6]    The applicable long-term tax exempt rate changes from month-to-month.  For ownership changes occurring in January 2023, the applicable long-term tax rate is 3.29%.

the Debtors' emergence from chapter 11 protection could trigger an Ownership Change, thereby endangering the Debtors' ability to utilize the Tax Attributes and damaging the value of the Debtors' estates.  Likewise, if a 50-percent shareholder of Party City Holdco Inc. were, for federal, state, or local tax purposes, to treat Common Stock as having become worthless prior to the Debtors' emergence from chapter 11 protection, such a claim could trigger an Ownership Change under section 382(g)(4)(D) of the IRC or corresponding provisions of state or local tax law, thus causing an adverse effect on the Debtors' ability to use the Tax Attributes.

13.     To maximize the use of the Tax Attributes and potentially enhance recoveries for the Debtors' stakeholders, the Debtors seek limited relief that will enable them to establish Procedures to closely monitor certain transfers of Beneficial Ownership of Common Stock and claims of certain worthless stock deductions so as to be in a position to act expeditiously to prevent such transfers or claims of worthless stock deductions, if necessary, with the purpose of preserving the Tax Attributes.  By establishing and implementing such Procedures, the Debtors will be in a position to object to transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock that could result in an Ownership Change that would threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

14.     Such a restriction would protect the Debtors' ability to use the Tax Attributes during the pendency of these chapter 11 cases.  In the event a pre-effective date Ownership Change has occurred, the resulting limitation on the Debtors' Tax Attributes primarily depends on the value of the Common Stock at such time, and thus becomes increasingly severe as the value of the Common Stock declines.  Although (as described below) the limitations imposed by section 382 of the IRC can be significantly less restrictive when an Ownership Change occurs

*pursuant* to a confirmed chapter 11 plan (or any applicable bankruptcy court order), the benefits available under section 382 of the IRC in connection with a confirmed chapter 11 plan (or any applicable bankruptcy court order) are not applied retroactively to reduce the limitations imposed on a corporation's ability to utilize its tax benefits resulting from a *previous* Ownership Change (such as an Ownership Change occurring during the pendency of a chapter 11 case).  *See* IRC § 382(*l*)(5), (6).

15.    Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value.  Specifically, the Interim Order and Final Order will affect only (a) holders of the equivalent of Beneficial Ownership of 4.5 percent or more of outstanding Common Stock, (b) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of 4.5 percent or more of outstanding Common Stock, (c) any "50-percent shareholder" seeking to claim a worthless stock deduction, and (d) certain holders of Claims, but only if the Debtors or another proponent of a plan of reorganization (with the consent of the Ad Hoc Noteholder Group, such consent not to be unreasonably withheld, conditioned, or delayed) determines that it is possible and value-maximizing to the Debtors' estate to pursue a chapter 11 plan that qualifies for the benefits afforded by section 382(*l*)(5) of the IRC.

16.    Aside from preserving the value of the Tax Attributes during the pendency of these cases, it also may be important for the Debtors to take steps to preserve the value of such Tax Attributes upon the effectiveness of a chapter 11 plan.  It is possible that, pursuant to a chapter 11 plan, the special relief afforded by section 382(*l*)(5) of the IRC could be both available and beneficial to the Debtors; the Debtors, in that circumstance and subject to further factual development and analysis, may seek to qualify for such relief.  Such relief, however, may

become unavailable to the Debtors if the trading and accumulation of certain Claims prior to the effective date of a chapter 11 plan is left unrestricted.

## II. Proposed Procedures for Transfers of Beneficial Ownership of Common Stock and Claims, or Declarations of Worthlessness with Respect to Beneficial Ownership of Common Stock

17.     The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to, certain transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock to ensure preservation of the Tax Attributes.  The Procedures, which are fully set forth in Exhibit 1 to each of the Interim Order and Final Order, are summarized below for illustrative purposes only.[7]  In addition, the Procedures with respect to Claims (the "Claims Procedures"), which are set forth in Exhibit 1 to the Final Order only, seek to permit the Debtors (with the consent of the Ad Hoc Noteholder Group, such consent not to be unreasonably withheld, conditioned, or delayed) to benefit from the application of section 382($l$)(5) of the IRC if the proponent of a plan of reorganization determines that any of the Debtors will likely benefit from such application of section 382($l$)(5) of the IRC.  The Claims Procedures, which only will become effective upon entry of the Final Order, permit the full trading of Claims until the Debtors or another Plan Proponent (as defined below) decides, after further factual development and analysis and subject to the consent of the Ad Hoc Noteholder Group (such consent not to be unreasonably withheld, conditioned, or delayed), to pursue a plan of reorganization contemplating the potential utilization of section 382($l$)(5) of the IRC.  Additionally, following the filing of such a plan, if necessary for the Debtors' ability to utilize section 382($l$)(5) of the IRC, the Plan Proponent may file a motion seeking an order from the Court requiring the sale of certain Claims that were

---

[7]     Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the Procedures.  To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

acquired during these chapter 11 cases.  The Claims Procedures would allow the Debtors or other

Plan Proponent to monitor and, if necessary to utilize section 382(*l*)(5) of the IRC, object to

certain transfers of Claims and require a purchaser of Claims to resell some or all of such Claims.

The Claim Procedures, which are fully set forth in Exhibit 1 to the Final Order, are summarized

below for illustrative purposes only.

### Procedures for Transfers of Beneficial Ownership of Common Stock

a. Any person or Entity (as defined in the Procedures) that, at any time on or after the Petition Date, has Beneficial Ownership of at least 4.5 percent of the Common Stock (a "Substantial Shareholder") must file with the Court, and serve upon the Declaration Notice Parties (as defined in the Procedures), a declaration of such status, substantially in the form of Exhibit 1A attached to the Procedures (each, a "Declaration of Status as a Substantial Shareholder"), on or before the later of (i) 20 business days after the date of the Notice of Interim Order (as defined herein) and (B) 10 calendar days after becoming a Substantial Shareholder; *provided*, that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.

b. At least 20 business days prior to effectuating any transfer of Beneficial Ownership of Common Stock and/or Options that would (i) increase or decrease the amount of Common Stock as to which a Substantial Shareholder has Beneficial Ownership or (ii) result in a person or Entity becoming or ceasing to be a Substantial Shareholder (including by exercise of any Option to acquire Common Stock), the parties to such transaction must file with the Court and serve upon the Declaration Notice Parties an advance written declaration of the intended transfer of Common Stock, substantially in the form of Exhibit 1B attached to the Procedures (each, a "Declaration of Intent to Accumulate Common Stock") or of Exhibit 1C attached to the Procedures (each, a Declaration of Intent to Transfer Common Stock" and, together with the Declaration of Intent to Accumulate Common Stock, each, a "Declaration of Proposed Transfer").

    i. The Debtors shall have 15 business days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such person or Entity an objection to the proposed transaction on the grounds that such transaction might adversely affect the Debtors' ability to utilize their Tax Attributes.

    ii. If the Debtors file an objection, the proposed transaction will remain ineffective unless such objection is withdrawn by the Debtors or such transaction is approved by a final and non-appealable order of the Court.

iii.   If the Debtors do not object within such 15-business day period, the proposed transaction may proceed solely as set forth in the Declaration of Proposed Transfer.   Further transactions within the scope of the Procedures must be the subject of additional notices in accordance with the Procedures, with an additional 15-business day waiting period for each Declaration of Proposed Transfer.

### Procedures for Declarations of Worthlessness of the Common Stock

a.   Any person or Entity that currently is or becomes a "50-percent shareholder" (within the meaning of section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations thereunder) (a "50% Shareholder") must file with the Court and serve upon the Declaration Notice Parties a notice of such status, substantially in the form of Exhibit 1D attached to the Procedures (each, a "Declaration of Status as a 50% Shareholder"), on or before the later of (i) 30 calendar days after the date of the Notice of Interim Order and (ii) 10 calendar days after becoming a 50% Shareholder; *provided*, that, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50% Shareholder even if no Declaration of Status as a 50% Shareholder has been filed.

b.   Prior to filing any federal, state, or local tax return, or any amendment to such a return, claiming any deduction for worthlessness of the Common Stock for a tax year ending before the earlier of the Debtors' emergence from chapter 11 protection, such 50% Shareholder must file with the Court and serve upon the Declaration Notice Parties an advance written notice substantially in the form of Exhibit 1E attached to the Procedures (a "Declaration of Intent to Claim a Worthless Stock Deduction").

i.   The Debtors shall have 15 business days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50% Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

ii.   During such 15 business day period, or any future period if the Debtors file an objection, the 50% Shareholder shall not claim, or cause or be claimed, the proposed worthless stock deduction to which the Declaration of Intent to Claim a Worthless Stock Deduction relates unless such objection is withdrawn by the Debtors or the proposed worthless stock deduction is approved by a final and non-appealable order of the Court.

iii.   If the Debtors do not object within such 15-business day period, the subsequent filing of the tax return or amendment with such claim will be permitted solely as set forth in the Declaration of Intent to Claim a Worthless Stock Deduction.  Additional tax returns or amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional 15-business-day waiting period.

*Procedures for Transfers of Claims against the Debtors*

a.   Disclosure of 382(*l*)(5) Plan.  If the proponent of a plan of reorganization (a "Plan Proponent") determines that any of the reorganized Debtors likely could qualify for and benefit from the application of section 382(*l*)(5) of the IRC and reasonably anticipates that any of the reorganized Debtors (or any successors thereto, the "Post-Emergence Company") will invoke such section (a "382(*l*)(5) Plan"), then, if the Plan Proponent shall have obtained the consent of the Ad Hoc Noteholder Group (such consent not to be unreasonably withheld, conditioned, or delayed), the Plan Proponent shall disclose the following in its proposed disclosure statement or, in the case of items (iii) through (v) described below, a later, separate notice (collectively, the "Proposed 382(*l*)(5) Disclosure Statement"):

   i.   Adequate information about the incremental tax benefits anticipated to be realized through the use of section 382(*l*)(5) of the IRC that, taking into account the Debtors' anticipated net unrealized built-in gains or net unrealized built-in losses, would not otherwise be available;

   ii.   A summary of any restrictions expected to be imposed on the transferability of securities issued under the 382(*l*)(5) Plan in order to preserve such incremental tax benefits;

   iii.   The (A) dollar amount of Claims (by class or other applicable classification) expected to result in a one-percent (1%) interest in the equity of the Post-Emergence Company (the "New Common Stock") and (B) number of any of the specified interests (the "Owned Interests") in the Debtors which shall include, but not necessarily be limited to, Common Stock expected to result in a one-percent (1%) interest in the New Common Stock, in each case based upon then-available information;

   iv.   A specified date (the "Determination Date") that is not less than 10 days after the service of the notice of the hearing with respect to the Proposed 382(*l*)(5) Disclosure Statement; and

   v.   A specified date (the "Reporting Deadline") that is not less than 5 days after the Determination Date, by which persons (including Entities) must serve on various parties the Notice of Substantial Claim Ownership (as described in Exhibit 1F to the Procedures attached to the Final Order) required by the Claims Procedures.

b.   Claims Trading Before and After the Determination Date.

   i.   Any person (including any Entity) generally may trade freely and make a market in Claims until the Determination Date.

   ii.   After the Determination Date, any acquisition of Claims by a person (including any Entity) who filed or is or was required to file a Notice of Substantial Claim Ownership or by a person (including any Entity) who

would be required to file a Notice of Substantial Claim Ownership as a result of the consummation of the contemplated transaction if the proposed acquisition date had been the Determination Date (each such person or Entity, a "Proposed Claims Transferee") shall not be effective unless consummated in compliance with the Claims Procedures.

iii.     At least 10 days prior to the proposed date of any acquisition of Claims by a Proposed Claims Transferee (each acquisition, a "Proposed Claims Acquisition Transaction"), such Proposed Claims Transferee shall serve upon the Plan Proponent and its counsel, the Debtors (if not the Plan Proponent) and their counsel, and the Ad Hoc Noteholder Group and their counsel, a notice of such Proposed Claims Transferee's request to purchase, acquire, or otherwise accumulate a Claim (a "Claims Acquisition Request"), in substantially the form annexed to the Procedures attached to the Final Order as Exhibit 1G, which describes specifically and in detail the Proposed Claims Acquisition Transaction, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements set forth in Bankruptcy Rule 3001.

iv.     The Plan Proponent may determine, in consultation with the Debtors (if not the Plan Proponent) and counsel to the Ad Hoc Noteholder Group, whether to approve a Claims Acquisition Request.  If the Plan Proponent does not approve a Claims Acquisition Request in writing within eight days after the Claims Acquisition Request is filed with the Court, the Claims Acquisition Request shall be deemed rejected.

c.     Creditor Conduct and Sell-Downs.

i.     Following the Determination Date, if the Plan Proponent determines that certain persons or Entities holding Claims must sell or transfer all or a portion of their Beneficial Ownership of Claims in order to ensure that the requirements of section 382(*l*)(5) of the IRC will be satisfied, the Plan Proponent may request that this Court enter an order approving the issuance of a notice (each, a "Sell-Down Notice") that such claimholder(s) must sell, cause to sell, or otherwise transfer a specified amount of its Beneficial Ownership of Claims.   Notwithstanding anything to the contrary in this motion, no Claim holder shall be required to sell, cause to sell, or otherwise transfer any Beneficial Ownership of Claims if such sale or transfer would result in such Claim holder's Beneficial Ownership of an aggregate amount of Claims (by class or other applicable classification) that is less than such claimholder's "Protected Amount" (as defined in Exhibit 1 to the Final Order).

ii.     Each Sell-Down Notice shall direct such Claim holder to sell, cause to sell, or otherwise transfer its Beneficial Ownership of the amount of Claims specified in the Sell-Down Notice to certain permitted transferees.

      iii.    Any person (including any Entity) that violates its obligations under the Claims Procedures shall be precluded from receiving, directly or indirectly, any consideration consisting of a Beneficial Ownership of the New Common Stock that is attributable to the "Excess Amount" of Claims for such person, or any consideration in lieu thereof, *provided* that such person may be entitled to receive any other consideration to which such person may be entitled by virtue of holding Claims.

### *Notice Procedures*

a.    The Debtors will serve notice of the Interim Order and the Final Order, substantially in the form attached as <u>Exhibit 1F</u> to the Procedures attached to the Interim Order (the "<u>Notice of Interim Order</u>" and, as the Notice of Interim Order may be modified to reflect that the Final Order has been entered, the "<u>Notice of Final Order</u>"), as applicable, and the Procedures upon all Notice Parties (as defined in the Procedures) and all banks, brokers, intermediaries, or mailing agents (collectively, the "<u>Nominees</u>") that hold Common Stock in "street name" for the beneficial holders no later than three business days after entry of the Interim Order or Final Order, as applicable.

b.    Upon receipt of the Notice of Interim Order or Notice of Final Order, as applicable, all Nominees of Common Stock shall serve the applicable notice upon parties on behalf of which they directly hold record ownership, with correlative instructions to serve notices, sequentially, to reach the beneficial level, by no later than five (5) business days after being served with notice. Additionally, any entity or broker or agent acting on such entity's or individual's behalf who sells Common Stock to another entity shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock or any broker or agent acting on such purchaser's behalf.

c.    To the extent confidential information is required in any declaration described in the Procedures, such confidential information may be filed and served in redacted form; *provided* that any such declarations served on the Debtors shall not be in redacted form. The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except to the extent (i) necessary to respond to a petition or objection filed with the Court, (ii) otherwise required by law, or (iii) that the information contained therein is already public; *provided* that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such declarations strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. If confidential information is necessary to respond to a petitioner's objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

d.    The Debtors, in consultation with the Ad Hoc Noteholder Group, may waive, in writing, any and all restrictions, stays, and notification Procedures contained in the Notice of Interim Order or Notice of Final Order.

## Basis for Relief

18.     Section 541 of the Bankruptcy Code provides that property of a debtor's estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.  The Tax Attributes are property of the Debtors' estates.  *See Official Comm. Of Unsecured Creditors* v. *PSS S.S. Co., Inc.* (*In re Prudential Lines, Inc.*), 107 B.R. 832, 839 (Bankr. S.D.N.Y. 1989) ("[D]ebtor's potential ability to utilize NOLs is property of an estate."), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991); *see also In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (holding that NOLs are property of the debtors' estates).  Section 362(a)(3) of the Bankruptcy Code, moreover, stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  Accordingly, any act of a holder of a debtor's equity securities that causes the termination or limits use of the NOLs violates the automatic stay.  *In re Prudential Lines Inc.,* 928 F.2d at 573 (holding that the debtors' NOLs were property of the debtors' estates and protected by the automatic stay).

19.     Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates.  Under sections 382 and 383 of the IRC, certain transfers of, or declarations of worthlessness with respect to, Beneficial Ownership of Common Stock prior to the consummation of a chapter 11 plan could limit the Debtors' ability to use the Tax Attributes. The Tax Attributes described above may provide the potential for material future tax savings or other potential tax structuring opportunities in these chapter 11 cases.  The termination or limitation of the Tax Attributes could be materially detrimental to all parties in interest.  Thus, granting the relief requested herein will preserve the Debtors' flexibility in operating the

Debtors' businesses during the pendency of these chapter 11 cases and implementing a transaction that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.  The Debtors also wish to provide notice that Debtors may seek to monitor ownership, approve (or disapprove) certain transfers of Claims, and require the sell down of certain Claims acquired during these chapter 11 cases to preserve the Debtors' ability to avail themselves of relief under section 382(*l*)(5) of the IRC, if such relief is determined to be desirable and otherwise available.

20.     Additionally, the Procedures do not bar all transfers of, or declarations of worthlessness with respect to, Beneficial Interests of Common Stock.  The Debtors seek to establish procedures only to monitor the types of transactions that would pose a serious risk under the ownership change test pursuant to sections 382 and 383 of the IRC and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the Debtors' utilization of the Tax Attributes.  Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties in interest, the benefits of implementing the Procedures outweigh subjecting a limited number of transfers to the Procedures.

21.     The Claims Procedures (unless and until they become effective) permit the full trading of Claims.  If, after further factual development and analysis, the Debtors or another Plan Proponent decide to pursue a chapter 11 plan that contemplates the potential utilization of section 382(*l*)(5) of the IRC, then, if necessary for the Debtors' ability to utilize that provision, a purchaser of certain Claims on or after the Petition Date may be required to sell some or all of such Claims.

22.     As they relate to an Ownership Change that occurs *pursuant* to a confirmed chapter 11 plan or any applicable bankruptcy court order, however, the limitations imposed by section 382 of the IRC are significantly less restrictive than those applicable to an Ownership Change that occurs before the effective date of (or otherwise outside of) a chapter 11 plan.  *See* IRC § 382(*l*)(5), (6).  Under section 382(*l*)(5) of the IRC (the "Section 382(*l*)(5) Safe Harbor"), a corporation is not subject to the annual limitation ordinarily imposed by section 382 of the IRC with respect to an Ownership Change, *provided* that the Ownership Change resulted from the consummation of a chapter 11 plan or pursuant to any applicable bankruptcy court order and that the debtor's pre-Ownership Change shareholders and/or "qualified creditors" emerge from the reorganization owning at least fifty percent (50%) of the total value and voting power of the reorganized debtor's stock immediately after the Ownership Change.  *Id*. § 382(*l*)(5)(A).  Under section 382(*l*)(5)(E) of the IRC and the applicable Treasury Regulations, a creditor whose Claim is exchanged for stock of the reorganized debtor under a chapter 11 plan or pursuant to any applicable bankruptcy court order is, for purposes of section 382 of the IRC, a "qualified creditor" (each, a "Qualified Creditor") if such creditor's Claim either (a) has been owned by such creditor for 18 or more months prior to Petition Date or (b) arose in the ordinary course of the debtor's business and was at all times beneficially owned by such creditor.  Creditors also may be classified as Qualified Creditors, despite not satisfying either of these conditions, if such creditors meet the criteria set forth in Treasury Regulations section 1.382-9(d)(3) (the "*De Minimis* Rule").

23.     Under the *De Minimis* Rule, a debtor may, for purposes of the Section 382(*l*)(5) Safe Harbor, "treat indebtedness as always having been owned by the beneficial owner of the indebtedness immediately before the [O]wnership [C]hange if the beneficial owner is not,

immediately after the [O]wnership [C]hange, either a 5-percent shareholder or an [E]ntity through which a 5-percent shareholder owns an indirect ownership interest" in the debtor.  Treas. Reg. § 1.382-9(d)(3)(i).  If a creditor is treated as having continuously owned its Claim(s) under the *De Minimis* Rule, such creditor will be regarded as a Qualified Creditor so long as the particular Claim(s) that it holds either (a) arose in the ordinary course of the debtor's business or (b) came into existence (or is treated under the applicable tax rules as having come into existence) at least 18 months prior to the Petition Date.

24.    Although there can be no assurance that the Section 382(*l*)(5) Safe Harbor ultimately will be available to the Debtors, and recognizing that the Debtors have not yet been able to determine whether the Section 382(*l*)(5) Safe Harbor, even if available, would yield significant benefits in the context of the Debtors' restructuring, it is important that the Debtors preserve their ability to take advantage of the Section 382(*l*)(5) Safe Harbor.  Because the determination of whether a creditor is a Qualified Creditor, in whole or in part, depends on the nature of its Claims and whether it has held its Claims (within the meaning of the applicable Treasury Regulations) until the effective date of the chapter 11 plan, transfers of Claims by creditors before such date pose a threat to the Debtors' ability to satisfy the requirements of the Section 382(*l*)(5) Safe Harbor.  The Claims Procedures, if put in place, would ensure that the Debtors will have flexibility, if, after further factual development and analysis, the Debtors determine the Section 382(*l*)(5) Safe Harbor is available and that it is desirable to comply with the requirements of the Section 382(*l*)(5) Safe Harbor and thus preserve the Tax Attributes to the fullest extent possible.

25.    Even if it is ultimately determined that either the Section 382(*l*)(5) Safe Harbor is unavailable to the Debtors or the relief provided thereby would not materially benefit the Debtors

in the context of their restructuring, section 382(*l*)(6) of the IRC provides a second, alternative rule that applies when an Ownership Change occurs pursuant to a confirmed chapter 11 plan or any applicable bankruptcy court order.  Specifically, section 382(*l*)(6) of the IRC provides that, if a debtor undergoes an Ownership Change pursuant to a chapter 11 plan and the Section 382(*l*)(5) Safe Harbor does not apply, then the appropriate value of the Debtors for purposes of calculating the annual limitation under section 382 of the IRC shall reflect the increase in value of the Debtors resulting from any surrender or cancellation of creditors' Claims.  Generally, under section 382 of the IRC, the taxable income of a loss corporation available for offset by pre-Ownership Change Tax Attributes is annually limited to an amount equal to the long-term tax-exempt rate multiplied by the value of the loss company's stock immediately before the Ownership Change.  Thus, assuming the equity value of the Debtors increases as a result of the reorganization, section 382(*l*)(6) of the IRC will provide for a higher (and therefore less restrictive) annual limitation than would result under the general rules of section 382 of the IRC, thereby preserving the Debtors' ability to utilize a greater portion of their otherwise available Tax Attributes to offset any post-Ownership Change income.  In all circumstances, it is in the best interests of the Debtors and their stakeholders for the Court to implement the Procedures in order to prevent an Ownership Change prior to the effective date of a chapter 11 plan or any applicable bankruptcy court order and the Claims Procedures in order to permit qualification for the Section 382(*l*)(5) Safe Harbor if the Debtors determine such 382(*l*)(5) Safe Harbor is otherwise available and would provide significant additional value.

26.    For the foregoing reasons, the relief requested herein is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties-in-interest in these cases. Accordingly, the Court should authorize the relief requested.

**Emergency Consideration**

27.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion.  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring.  The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

28.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

29.     Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or

perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

30.      The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as Prepetition ABL Agent, and counsel thereto, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017; (d) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, NY 10017; (e) Ankura Trust Company, LLC, as First Lien Notes Trustee, 140 Sherman St., 4th Fl., Fairfield, CT 06824; (f) Wilmington Trust, National Association, as Unsecured Notes Trustee, 246 Goose Ln., Ste. 105, Guilford, CT 06437; (g) counsel to the Ad Hoc Group of Anagram Noteholders, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (h) Ankura Trust Company, LLC, as agent under the DIP Facility, 140 Sherman St., 4th Fl., Fairfield, CT 06824, and counsel thereto, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal

Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) other regulatory agencies having a regulatory or statutory interest in these cases; (n) the registered holders of the Common Stock; (o) all known Substantial Shareholders (or their counsel, if known); and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

January 18, 2023                    Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (pending *pro hac vice*)
Kenneth S. Ziman (pending *pro hac vice*)
Michael M. Turkel (pending *pro hac vice*)
Grace C. Hotz (pending *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
kziman@paulweiss.com
mturkel@paulweiss.com
ghotz@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

## **Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.  This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ John F. Higgins*
John F. Higgins

## **Certificate of Service**

I certify that on January 18, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins