**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) )  Case No. 23-90005 (DRJ) |
| Debtors. | ) )  (Joint Administration Requested) )  (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS**
**TO MAINTAIN AND ADMINISTER THEIR EXISTING CUSTOMER**
**PROGRAMS AND HONOR CERTAIN PREPETITION OBLIGATIONS RELATED**
**THERETO AND (II) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 3:00 p.m. (prevailing Central Time) on January 18, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on January 18, 2023 at 3:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' home page. The meeting code is "JudgeJones." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659).  The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to maintain and administer their Customer Programs (as defined herein) and honor certain prepetition obligations related thereto on a postpetition basis in the ordinary course and (b) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1408.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

5.      On January 17, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.  A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[2]

## Customer Programs

7.  In the ordinary course of business, through their retail and consumer products segments, the Debtors provide certain incentives, discounts, promotions, and accommodations, and administer certain related programs described herein, to attract customers and maintain positive customer relationships (collectively, the "Customer Programs").[3]  The Customer Programs promote customer satisfaction and inure to the goodwill of the Debtors' businesses and the value of their brands.  Maintaining the goodwill of their customers is critical to the Debtors' ongoing operations in these chapter 11 cases and is necessary to maximize value for the benefit of all of the Debtors' stakeholders.

8.  As of the Petition Date, the Debtors estimate that the aggregate amount of outstanding prepetition obligations related to Customer Programs is approximately $14,490,000.

---

[2]  Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

[3]  Although this motion is intended to be comprehensive, the Debtors may have inadvertently omitted certain Customer Programs.  The Debtors request relief with respect to all Customer Programs, regardless of whether every Customer Program is specifically identified herein.

These obligations include accrued credits, adjustments, discounts, prepayments, or other similar obligations owing to customers.  The Debtors submit that the benefits to the Debtors, their estates and creditors, and all other parties in interest of paying outstanding prepetition obligations related to Customer Programs on a timely basis far exceed the costs of such payments.  Accordingly, the Debtors seek authorization to maintain the Customer Programs in the ordinary course of business and to continue to honor all customer-related obligations, including any prepetition obligations associated therewith.

**I.**     **The Refund and Exchange Programs**

9.     The Debtors allow their customers to return or exchange eligible merchandise pursuant to customary refund and exchange programs (the "Refund and Exchange Programs").

10.     Whether purchased in-store or online, the Debtors typically accept returns and exchanges from their retail customers within 30 days of the date of purchase if the returnable product is in new or unworn condition, in its original packaging, and accompanied by a receipt. However, certain seasonal merchandise (e.g., Christmas, Easter, and Halloween items, including costumes) may only be returned (a) for a refund, up to seven (7) days prior to the holiday associated with such merchandise, and (b) for in-store credit, within the seven (7) days prior to the holiday associated with such merchandise.  Qualifying merchandise may be returned either in-store or by mail for a refund of the full purchase price, credited to the original form of payment.   In the alternative, retail customers may exchange qualifying merchandise and either pay or receive a refund equal to any difference in the price of the merchandise exchanged.

11.     The Debtors' consumer products business permits customers to return wholesale merchandise for account credit in limited circumstances and subject to a 25 percent handling charge.  Generally, these customers are required to submit claims to the Debtors within ten (10)

business days of receipt, and damaged merchandise is only accepted for return upon documented approval by an Amscan sales representative or Amscan's customer service department.

12.     The Refund and Exchange Programs are critical to maintaining the goodwill of the Debtors' customer base as they allow the Debtors to protect customer confidence and ensure customer satisfaction.  Programs like the Refund and Exchange Programs are common among retailers and manufacturers and distributors of consumer products, and similar programs are used by the Debtors' competitors.  Without the Refund and Exchange Programs, potential customers may be unwilling to shop at the Debtors' stores or purchase the Debtors' products, which could jeopardize the Debtors' chapter 11 process.

13.     The Debtors estimate that, as of the Petition Date, approximately $8,400,000 of credit issued to customers under the Refund and Exchange Programs is outstanding.  The Debtors seek authorization to continue the Refund and Exchange Programs and honor the Debtors' obligations related thereto, including any prepetition obligations, in the ordinary course of business.

**II.     Retail Sales Promotions**

14.     In the ordinary course of business, the Debtors conduct certain limited sales promotions at their retail stores and through their e-commerce websites (the "Sales Promotions"). The Sales Promotions include clearance discounts, seasonal discounts, and other sales and promotions on eligible merchandise.  The Debtors notify customers of their Sales Promotions through mobile, email, and their e-commerce platforms, among other channels.

15.     The Debtors believe that the Sales Promotions encourage retail sales and enable the Debtors to better manage their inventory.  As of the Petition Date, the Debtors do not believe there are any amounts due and owing on account of Sales Promotions.  The Debtors seek authorization

to continue the Sales Promotions in the ordinary course of business and to honor the Debtors' obligations related thereto on a postpetition basis.

### III.    Consumer Products Rebate Program

16.    The Debtors' consumer products business provides rebates and discounts (the "Consumer Products Rebate Program") to certain large-volume purchasers of products that are manufactured and distributed by the Debtors.  Rebates and discounts under the Consumer Products Rebate Programs are tied to the volume of customer orders, the purchase of specific products, and/or the timely payment of the Debtors' invoices.  Generally, customer rebates and discounts are redeemed through check reimbursement or credit issued to the customer's account for application to future invoices.  These rebates and discounts incentivize the Debtors' wholesale customers to purchase from and/or promote products that are manufactured and distributed by the Debtors' consumer products business.

17.    As of the Petition Date, the Debtors' obligations to customers under the Consumer Products Rebate Program total approximately $5,890,000.  Of the $5,890,000, approximately $5,533,000 represents cash payment obligations and the remaining $357,000 is in the form of credits to be applied to future customer purchases.

### IV.    Charitable Fundraising Program

18.    In the ordinary course of business, the Debtors offer customers at their retail store locations the choice to round the amount of their total purchase up to the nearest dollar and donate the difference to certain charitable organizations (the "Charitable Fundraising Program").  The Debtors subsequently transfer all donations to the appropriate charitable organization.  In the 12 months leading up to the Petition Date, the Debtors collected and disbursed approximately $264,870 in customer donations through the Charitable Fundraising Program.  As of the Petition Date, the Debtors hold approximately $200,000 in committed but unremitted donations in

connection with the Charitable Fundraising Program.  The Debtors seek authorization to continue

the Charitable Fundraising Program and to honor all of the Debtors' obligations related thereto,

including satisfying any prepetition obligations on a postpetition basis in a manner consistent with

past practice.

**V.      Franchisee Programs**

19.     Approximately 53 Party City stores are operated by franchisees (collectively, the

"Franchisees") that utilize the Debtors' format, design specifications, methods, standards, systems

and trademarks pursuant to franchise agreements with the Debtors. The Debtors' sales to

franchised stores generally mirror, with respect to size, mix, and category, the Debtors' sales to

stores owned by the Debtors.  Like the Debtors' other wholesale customers, certain Franchisees

receive rebates under the Consumer Products Rebate Program from time to time based on order

volume, the purchase of specific products, and/or timely payment of the Debtors' invoices.

20.     The Debtors maintain certain  programs designed to increase the demand for

products sold at franchised Party City stores and protect and enhance the Debtors' reputation and

goodwill (the "Franchisee Programs").  For example, the Debtors administer a group advertising

fund to which Franchisees contribute for the purposes of regional and national advertising, conduct

various training programs for the benefit of Franchisees, and generally maintain a continuing

advisory relationship with Franchisees, including consultation regarding developments in the

Debtors' businesses and general operations.

21.     Although franchised stores represent less than 10 percent of the number of the

Debtors' total store locations, ongoing royalty fees from Franchisees remain a reliable source of

revenue for the Debtors.  If the Debtors fail to perform their obligations to Franchisees in the

ordinary course of business, the Franchisees could be harmed, potentially leading to unnecessary

store closures and a loss of corresponding revenues for the Debtors.  Further, deterioration of the

relationship between the Debtors and the Franchisees could negatively affect the Debtors' relationship with customers of franchised stores.  Accordingly, the Debtors request authority to continue the Franchisee Programs in the ordinary course of business on a postpetition basis.

**Basis for Relief**

**I.    Continuing to Honor the Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363 of the Bankruptcy Code and Is in the Best Interests of the Debtors' Estates**

22.     Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing.  Consequently, the postpetition continuation, renewal, and replacement of obligations under the Customer Programs in the ordinary course of business is likely permitted by sections 363(c), 1107(a), and 1108 of the Bankruptcy Code, without further application to the Court.  Out of an abundance of caution, however, the Debtors request the relief described herein.

23.     Courts have generally acknowledged that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Scotia Dev., LLC*, No. 07-20027, 2007 WL 2788840, at *1 (Bankr. S.D. Tex. Sep. 21, 2007) (acknowledging the existence of the doctrine of necessity); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

24.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere*

*Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.

25.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.   Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *Ionosphere Clubs*, 98 B.R. at 176.

26.     The Court can authorize the Debtors to continue the Customer Programs and satisfy prepetition obligations related thereto pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  There can be no doubt that continuing to administer these programs without interruption during the pendency of these chapter 11 cases is critical to preserve the value of the Debtors' estates.  Customers expect and rely on the Customer Programs and may not continue to support the Debtors' businesses if the Customer Programs are discontinued.  It is incontrovertible that support from the Debtors' customers is essential for go-forward operations.

27.     The substantial benefit conferred on the Debtors' estates by the Customer Programs warrants the authority to honor the Customer Programs and any of the Debtors' obligations related thereto.  Thus, the Debtors respectfully request the authority to continue their Customer Programs and honor prepetition commitments related thereto in the ordinary course of business on a postpetition basis.

**The Court Should Authorize the Debtors'
Financial Institutions to Honor and Process the Debtors' Payments**

28.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, access to cash collateral, and proceeds of the DIP Facility.  Additionally, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**Emergency Consideration**

29.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion.  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring.

The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

30.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

31.     Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should

not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

32.     The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPMorgan Chase Bank, N.A., as Prepetition ABL Agent, and counsel thereto, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017; (d) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, NY 10017; (e) Ankura Trust Company, LLC, as First Lien Notes Trustee, 140 Sherman St., 4th Fl., Fairfield, CT 06824; (f) Wilmington Trust, National Association, as Unsecured Notes Trustee, 246 Goose Ln., Ste. 105, Guilford, CT 06437; (g) counsel to the Ad Hoc Group of Anagram Noteholders, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (h) Ankura Trust Company, LLC, as agent under the DIP Facility, and counsel thereto, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) other regulatory agencies having a regulatory or statutory interest in these cases; (n) the Franchisees; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

January 18, 2023

Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (pending *pro hac vice*)
Kenneth S. Ziman (pending *pro hac vice*)
Michael M. Turkel (pending *pro hac vice*)
Grace C. Hotz (pending *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
kziman@paulweiss.com
mturkel@paulweiss.com
ghotz@paulweiss.com

*Proposed Counsel to the Debtors and*
*the Debtors in Possession*

## Certificate of Accuracy

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.  This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ John F. Higgins*
John F. Higgins

## Certificate of Service

I certify that on January 18, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins
