IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>PARTY CITY HOLDCO INC., *et al.*,[1]<br><br>　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-90005 (DRJ)<br><br>(Jointly Administered) |

**DECLARATION OF DAVID ORLOFSKY, CHIEF
RESTRUCTURING OFFICER OF PARTY CITY HOLDCO
INC., IN SUPPORT OF CONFIRMATION OF THE FOURTH
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF PARTY CITY HOLDCO INC. AND ITS DEBTOR AFFILIATES**

I, David Orlofsky, make this declaration pursuant to 28 U.S.C. § 1746:

　　1.　　I am a Managing Director of AlixPartners, LLP ("AlixPartners") and have served as the Chief Restructuring Officer of Party City Holdco Inc. (together with the other above-captioned debtors and debtors in possession, the "Debtors") since January 16, 2023. AlixPartners has served as financial advisor to the Debtors related to the chapter 11 cases since October 2022.[2] I have more than 23 years of restructuring experience in providing both interim management and advisory services to clients, including by serving as the Chief Restructuring Officer of RCS Capital Corporation, Preferred Sands, and Mark IV Industries and the interim

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] In addition to the current engagement, the Debtors have previously retained AlixPartners in connection with prior strategic transactions dating back to 2020.

Chief Operating Officer and Chief Financial Officer of Malden Mills. I hold a bachelor's degree in business administration from Montclair State University.

2. I submit this declaration (this "Declaration") in support of confirmation of the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Party City Holdco Inc. and Its Debtor Affiliates*, dated August 31, 2023 (as may be amended, modified, or supplemented in accordance with the terms thereof, the "Plan"), and the *Debtors' (I) Memorandum of Law in Support of (A) Final Approval of the Debtors' Disclosure Statement and Disclosure Statement Supplement and (B) Confirmation of the Debtors' Plan and (II) Omnibus Reply to Objections Thereto* (the "Confirmation Brief"),[3] each filed substantially contemporaneously herewith.

3. Through my role as an advisor to, and officer of, the Debtors, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I am also familiar with the terms of the Debtors' Plan, Disclosure Statement, and Disclosure Statement Supplement. Except as otherwise indicated, all facts in this Declaration are based upon (a) my personal knowledge, (b) my discussions with the Debtors' management team and advisors, (c) my review of relevant documents (including the Plan, Disclosure Statement, and Disclosure Statement Supplement) and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, (d) information provided to me by AlixPartners employees working under my supervision, or (e) my opinions based upon my experience and knowledge.

4. I am over the age of eighteen and authorized to submit this declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth in this declaration.

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Confirmation Brief, as applicable.

**The Plan Is in the Best Interests of All Creditors and Equity Interest Holders**

5.      One of the services the Debtors asked AlixPartners to provide is the preparation of a liquidation analysis for purposes of determining whether the Plan complies with the requirements of section 1129(a)(7) of the Bankruptcy Code.  I understand that, to satisfy the "best interests" test under section 1129(a)(7) of the Bankruptcy Code, a debtor must demonstrate that each holder of a claim or equity interest in an impaired class (a) has accepted the plan or (b) is receiving at least as much value under the plan as it would receive in a hypothetical chapter 7 liquidation.  AlixPartners, with the assistance of the Debtors and their other advisors, performed a hypothetical analysis that represents a good faith estimate of what such holders would recover in a hypothetical liquidation under chapter 7 of the Bankruptcy Code (the "Liquidation Analysis"), included as Exhibit E to the Disclosure Statement and attached hereto as **Exhibit A**.[4]

6.      Since the Court's conditional approval of the Disclosure Statement, in May 2023, the Debtors developed a revised set of financial projections (the "Updated Financial Projections") based on (a) actual financial performance through the period ended March 31, 2023, and (b) adjustments to certain forward-looking assumptions based on recent financial performance and a revised business outlook following changes in the macroeconomic environment.  The Updated Financial Projections cover the period from April 1, 2023, through December 31, 2023, and the fiscal years from January 1, 2024, through December 31, 2027. Based on my review of, and involvement preparing, the Updated Financial Projections and the Liquidation Analysis, I do not believe that the Updated Financial Projections, the passage of time

---

[4]  After the Debtors reached agreement over the terms of the Creditors' Committee Settlement with the Creditors' Committee and the Ad Hoc Noteholder Group, AlixPartners also calculated the projected value that holders of General Unsecured Claims will receive under the Plan, as disclosed in the *Notice of GUC Cash Allocation* [Docket No. 921] and attached hereto as **Exhibit B**.

since the Court's conditional approval of the Disclosure Statement, or the Plan modifications impact the overall conclusions in the Liquidation Analysis.

7. To conduct the Liquidation Analysis, the Debtors and AlixPartners assumed that an orderly liquidation of inventory and store furniture, fixtures, and equipment through a going out of business sale process (the "GOB") by the Debtors would generate greater recoveries than an immediate distressed sale by a chapter 7 trustee. Based on my experience, this is consistent with the assumptions set forth in many prior retail chapter 11 cases, including *In re True Religion Apparel, Inc.*, No. 17-11460 (CSS) (Bankr. D. Del. 2017); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. 2017); and *In re Payless Holdings LLC*, No. 17-42267 (Bankr. E.D. Mo. 2017).

8. Specifically, the Debtors and AlixPartners: (a) estimated the cash proceeds that would be generated from a hypothetical orderly liquidation of the Debtors' assets (the "Liquidation Proceeds"), assuming a GOB is commenced on the Debtors' projected Effective Date (as of the time of filing of the Liquidation Analysis) and completed in thirteen (13) weeks, after which time the Debtors' remaining real property leases would be rejected and the Chapter 11 Cases would convert to cases under chapter 7 of the Bankruptcy Code; (b) determined the distribution (the "Liquidation Distribution") that each holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (c) compared each holder's Liquidation Distribution to the estimated distribution under the Plan that such holders would receive if the Plan is confirmed and consummated.

9. The complete analysis, methodology, assumptions, and conclusions of the Liquidation Analysis are set out in greater detail in Exhibit E to the Disclosure Statement and **Exhibit A** of this Declaration. Based on my involvement in the preparation of the Liquidation

Analysis and my experience as a restructuring professional, it is my opinion that the methodology used to prepare the Liquidation Analysis is appropriate, and the assumptions and conclusions set forth therein are fair and reasonable under the circumstances.

10. As set forth in the Liquidation Analysis, and incorporated herein by reference, the liquidation of the Debtors' assets would result in Liquidation Proceeds ranging from approximately $483 million to $551 million, with a midpoint of approximately $517 million that would be distributed to creditors. Subject to the assumptions and qualifications contained therein, the Liquidation Analysis establishes that all Holders of Claims in Impaired Classes will receive or retain property under the Plan valued, as of the Effective Date, in an amount greater than or equal to the value of what they would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

11. Specifically, the Liquidation Analysis demonstrates that:

(a) creditors in Class 3 (Prepetition ABL Claims) would receive a 100% recovery if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, which is equal to the value of the recovery that such creditors are expected to receive under the Plan;[5]

(b) creditors in the other voting classes (Class 4 (Secured Notes Claims) and Class 5 (General Unsecured Claims)) would receive no recovery if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code. This is because distributable value

---

[5] While the Liquidation Analysis was conducted when the Plan provided for repayment of the Prepetition ABL Claims in full, its conclusions do not change as a result of the Plan modifications that provide that Holders of Prepetition ABL Claims will instead receive Takeback Debt, unless any individual Holder votes to accept the Plan and roll its Prepetition ABL Claims into a modified ABL Exit Facility that the Debtors may raise under certain conditions. Under the revised Plan, Holders of Prepetition ABL Claims are projected to recover 100% on their Claims. *See Supplement to Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Reorganization of Party City Holdco Inc. and Its Debtor Affiliates* [Docket No. 1462], at Ex. A (Plan Treatment Summary) (showing 100% projected recoveries for Holders in Class 3A and Class 3B).

would be insufficient to repay the Debtors' post-petition debtor-in-possession financing facility in full; and

        (c)     holders of Claims and Interests, as applicable, in (i) Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), if such classes are Impaired, and (ii) Class 8 (Interests in PCHI) would receive no recovery if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, for the same reasons as described above.

12.    Accordingly, I believe that the Plan fully complies with and satisfies the best interests test and all other requirements of section 1129(a)(7) of the Bankruptcy Code.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

August 31, 2023	/s/ David Orlofsky
	David Orlofsky
	Chief Restructuring Officer, Party City
	Holdco Inc.; Managing Director,
	AlixPartners, LLP