**<u>Exhibit A</u>**

**Liquidation Analysis**

### Liquidation Analysis[1]

### Introduction

Under the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of an allowed claim or interest that does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To demonstrate that the Plan satisfies the best interests of creditors test, the Debtors, with the assistance of their professional advisors, have prepared the hypothetical liquidation analysis set forth in this **Exhibit E** attached to the Disclosure Statement (the "Liquidation Analysis").

Consistent with the assumptions set forth in many prior retail Chapter 11 cases (e.g., In re True Religion Apparel, Inc., No. 17-11460 (CSS) (Bankr. D. Del. 2017), In re rue21, inc., No. 17-22045 (GLT) (Bankr. W.D. Pa. 2017), In re Payless Holdings LLC, No. 17-42267 (Bankr. E.D. Mo. 2017), the Liquidation Analysis set forth herein assumes that an orderly liquidation of inventory and store FF&E through a going out of business sale process (the "GOB") by the Debtors would generate greater recoveries than an immediate distressed sale by a Chapter 7 Trustee. In other words, as set forth in this Liquidation Analysis, the Debtors believe the Plan provides each Holder of an impaired Claim with a recovery that is not less than the value such Holder would receive or retain in an orderly Chapter 11 liquidation or a Chapter 7 liquidation, even assuming recoveries are maximized pursuant to the Debtors conducting an orderly liquidation as opposed to a "fire sale" in Chapter 7.

The first step in determining whether the best interests test has been met is to determine the dollar amount that would be generated from the hypothetical orderly liquidation of the Debtors' assets. The gross amount of Cash available for distribution would be the sum of the proceeds from the disposition of the Debtors' assets and the cash and equivalents held by the Debtors at the time of the commencement of the liquidation. Such amount would then be reduced by the amount of: (a) any Claims secured by such assets; and (b) the costs and expenses of the liquidation and certain additional administrative expenses that may result from the termination of the Debtors' business. Any remaining net cash would be allocated to creditors and shareholders in strict priority in accordance with Section 726 of the Bankruptcy Code.

The Liquidation Analysis assumes that the Debtors would immediately conduct a GOB auction under Section 363 of the Bankruptcy Code to sell the Debtors' inventory and FF&E assets to a nationally known retail liquidator (the "Liquidator").  It is assumed that the Liquidator would commence the GOB on or about May 31, 2023 (i.e., on or about the Debtors' projected Effective

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement.

Date). It is assumed the GOB would be completed in 13 weeks, the Debtors' remaining real property leases would be rejected, and the Debtors' Chapter 11 cases would convert to a Chapter 7.

The Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.  If such Chapter 11 cases are subsequently converted to a Chapter 7 liquidation, additional Claims may arise against the Debtors' Estates that are not currently fully reflected in the Liquidation Analysis but could significantly impact the conclusions set forth herein.

A general summary of the assumptions used in preparing this Liquidation Analysis follows.

**Estimate of Net Proceeds**

Estimates were made of the cash proceeds that might be realized from the hypothetical liquidation of the Debtors' assets.  It is assumed that the Liquidator will commence the GOB process on May 31, 2023 (the "Liquidation Date") and will be authorized to conduct the GOB for 13 weeks (the "Liquidation Period").  For purposes of the analysis, the Debtors have used the projections and assumptions from the approved Revised DIP Budget dated March 16, 2023 (and in accordance with the Final DIP Order) to estimate the value of Cash & Cash Equivalents, Credit Card Receivables, Trade Receivables, Inventory, and Post-Petition Liabilities.

The estimated proceeds received from the Liquidation are based on the assumption that the Liquidator would be authorized to conduct a 13-week GOB sale at all of the Debtors' locations and transfer all inventory in the distribution centers and manufacturing facilities to these stores. For the recovery assumptions, the Debtors primarily relied on historical inventory appraisals, adjusted for certain factors including seasonality, inventory mix and the results of the close store liquidation process to-date, while acknowledging the limited timeframe the Debtors may have to complete the liquidation process, including the exit of store, distribution center, and manufacturing plant leases.

There are no assurances that an orderly liquidation could be completed during the Liquidation Period or that the net orderly liquidation value ("NOLV") will be realized as assumed.  There is also no assurance that the recoveries the Debtors have assigned to the assets will in fact be realized.

**Estimate of Costs**

The Debtors' estimated cost of an orderly liquidation includes all of the required store operating expenses for a GOB and assumes that corporate costs are materially reduced from the going concern costs prior to May 31, 2023.  The estimate also includes professional fees for those professionals that continue to provide necessary services to the Debtors in connection with an orderly liquidation.  The expenses also assume a conversion to a Chapter 7 proceeding immediately after the completion of the GOB or other prompt liquidation approved by the Bankruptcy Court.

It is assumed all real property leases and executory contracts would be rejected in accordance with Section 365 of the Bankruptcy Code.  It is possible that the wind down expenses may be different

from the estimated amounts.  In addition, certain costs could arise during the Liquidation Period which are currently unanticipated, and these may further jeopardize the projected recoveries.

**Distribution of Net Proceeds Under Absolute Priority**

Under a Chapter 7 liquidation, all secured claims are required to be satisfied from the proceeds of the collateral securing such claims before any such proceeds would be distributed to any other creditors, subject to any agreed carve-out approved by the Court. This analysis assumes the application of the rule of absolute priority of distributions with respect to the remaining proceeds of the Debtor. Under that rule, no junior creditor receives any distribution until all senior creditors are paid in full. The costs, expenses and fees associated with the liquidation would be paid in full from the liquidation proceeds before the balance of the proceeds would be made available to pay Chapter 11 administrative Claims, and then to pay priority Claims and then to pay unsecured Claims.

After consideration of the effects of a liquidation on the ultimate proceeds available for distribution to creditors, including, (a) the costs and expenses of a liquidation, (b) the erosion in value of assets in a liquidation case in the context of the expeditious liquidation prudent under these circumstances and the "forced sale" atmosphere that would likely prevail, and (c) the substantial increase in Claims which would be satisfied on a prior basis, **THE DEBTORS HAVE DETERMINED THAT CONFIRMATION OF THE PLAN WILL PROVIDE EACH CREDITOR WITH A RECOVERY THAT IS NOT LESS THAN SUCH CREDITOR WOULD RECEIVE PURSUANT TO A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND FURTHER UNDER A CHAPTER 7 OF THE BANKRUPTCY CODE**.

**General Assumptions**

The Liquidation Analysis reflects estimates of the proceeds that might be realized through the orderly liquidation of the Debtors' assets. This analysis is based on the Debtors' estimated asset values, which are based on assumptions and estimates from the approved Revised DIP Budget dated March 16, 2023 (pursuant to the Final DIP Order) and the Debtors' balance sheet as of December 31, 2022 and rolled forward or forecasted through the Liquidation Date.  The Liquidation Analysis assumes that the Liquidator would be able to conduct the GOB within the 13-week Liquidation Period.  The Liquidation Period is assumed to be sufficiently long enough to allow the Debtors to sell their assets on an orderly basis, and wind down operational activities, before the conversion to a Chapter 7.  The need to sell the inventory and convert other assets and property to cash within the projected timeframe may have an adverse impact on the realized proceeds of such sales.  While it is possible that the Liquidation Period could be extended, this would increase the risk of additional liquidation costs and reduce overall distributable proceeds and recoveries.

**The Liquidation Analysis is based upon a number of estimates and assumptions that, although developed by and considered reasonable by the management of the Debtors, are inherently subject to significant economic, business, governmental, regulatory, competitive uncertainties as well as other contingencies beyond the control of the Debtors or their management.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  In addition, the Liquidation Analysis was completed shortly after the deadline for filing claims against the Debtors' Estates, and the Debtors have therefore neither fully evaluated Claims filed against the Debtors or adjudicated such Claims before the Bankruptcy Court.  ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE COMPANY WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, ACTUAL RESULTS COULD VARY MATERIALLY AND ADVERSELY FROM THOSE CONTAINED HEREIN, AND THE AMOUNT OF FINAL ALLOWED CLAIMS AGAINST THE DEBTORS' ESTATES MAY DIFFER FROM THE CLAIM AMOUNTS USED IN THIS LIQUIDATION ANALYSIS.**

**This Liquidation Analysis was developed solely for purposes of the Disclosure Statement and Plan and to enable the Holders of Claims entitled to vote on the Plan to make an informed judgment about the restructuring and Plan.  It should not be used or relied on for any other purpose, including the purchase or sale of securities of, or claims or interests in, the Debtors.**

**Nothing contained in this hypothetical liquidation analysis is intended to be or constitutes an admission of the Debtors.**

The following is a summary of the major assumptions underlying the Liquidation Analysis:

1.  The NOLV is developed from the basis of the Debtors selling their inventory to a Liquidator who will conduct the GOB for a fixed amount, paid in advance. The rationale for the Liquidation Period is that the Liquidator would need to utilize the Debtors' store, distribution center and manufacturing employees and leased property to consolidate and liquidate inventory during the Liquidation Period, which may not be possible in a liquidation.

    The Debtors would liquidate the majority of other assets during the Liquidation Period.

    As an alternative to an orderly Chapter 11 liquidation, the Bankruptcy Court may appoint a Chapter 7 Trustee to liquidate and winddown the Debtors' estates. Under such circumstances, the Chapter 7 Trustee would be independent and would be entitled to make all of his or her own decisions (subject to Bankruptcy Court approval as applicable) regarding the liquidation of the estates, hiring of professionals, the pursuit of Claims or litigation, and the payment of or objection to Claims.

2.  This Liquidation Analysis also assumes that the orderly Chapter 11 liquidation would provide greater recoveries to creditors as compared to a liquidation under a Chapter 7

Trustee. Because the Liquidation Analysis demonstrates that the Plan provides greater recoveries to creditors than an orderly Chapter 11 liquidation, the Plan, by extension, provides greater recoveries to creditors than a Chapter 7 distressed or fire sale liquidation, thereby satisfying the standard set forth in Section 1129(a)(7) of the Bankruptcy Code.

3. The Liquidation Analysis relies on the estimates and assumptions from the Debtors' Revised DIP Budget dated March 16, 2023 (pursuant to the Final DIP Order) and the Debtors' financial statements as of December 31, 2022 rolled forward to the commencement of the orderly liquidation date of May 31, 2023, and other figures estimated by management. The Debtors do not believe that the rolled forward asset estimates will materially change prior to the assumed Liquidation Date of May 31, 2023.

4. This Liquidation Analysis assumes that a majority of the Debtors' assets will be liquidated during the Liquidation Period. Although the Debtors believe a 13-week period is sufficient to allow for an orderly liquidation of all retail inventory and sufficient to vacate any leased property, there can be no assurances made that all assets will be completely liquidated during this time period. Moreover, the assumptions set forth in the "Estimate of Net Proceeds" section and in the immediately preceding section are incorporated in this summary of assumptions.

5. The Liquidation Analysis assumes that a Chapter 7 Trustee, the Committee, and/or a subset of the Debtors' management team will take all of the necessary steps required to fully wind down the Debtors' operations and Estates within 90 days of the conclusion of the orderly liquidation (subject to resolution of Administrative Claims).

6. It is assumed that assets will be sold for Cash or Cash equivalents.

7. It is assumed that assets subject to capital leases (generally leased furniture and computer hardware) will be returned to the lessor. The Liquidation Analysis has not estimated any applicable deficiency claims associated with such leases.

8. It is assumed that all non-operating assets would be disposed of through sale, liquidation, termination and/or abandonment as appropriate.

9. The Liquidation Analysis presents the liquidation of the Debtors on a consolidated basis as the Holders of Prepetition ABL Claims, DIP Claims, and Secured Notes Claims have liens on substantially all of the assets of each of the individual Debtors. Accordingly, proceeds realized from each Debtor are aggregated in a common distribution source. For purposes of distribution, each Claim asserted against or Interest in any Debtor is presumed to be entitled to a distribution from the aggregated proceeds. Any Claim against a Debtor and any guarantee thereof executed by any other Debtor and any joint or several liabilities of any of the Debtors are deemed to have one right to a distribution from the aggregated proceeds. As set forth herein, it is assumed that no value would be available to any creditors other than the Holders of Prepetition ABL Claims, DIP Claims, and Secured Notes Claims.

10. The Liquidation Analysis does not include any recoveries from the pursuit of any potential preferences, fraudulent conveyances, or other causes of action and does not include estimated costs associated with pursuing those actions.

## Specific Notes to the Liquidation Analysis

[A] <u>Cash & Cash Equivalents</u>: The cash balance is the projected balance of cash as of the Liquidation Date, and includes projected amounts funded into the Professional Fee Escrow Account (which will be used to pay Professional Fee Carve-Out Claims described in footnote L below) and amounts funded into the ABL Cash Collateral Account (which will be used to pay Prepetition ABL Claims described in footnote M below). The cash balance also includes estimated sale proceeds from the Debtors' interest in Granmark, S.A. De CV, pursuant to a securities purchase agreement. The Debtors have requested Bankruptcy Court approval of such sale pursuant to the *Emergency Motion for Entry of an Order (I) Authorizing (A) the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances and (B) the Debtors to Enter into and Perform Under the Purchase Agreement and (II) Granting Related Relief* [Docket No. 760] and the Liquidation Analysis assumes that such sale is approved and consummated. A 100% recovery on cash has been estimated for the low and high scenarios.

[B] <u>Accounts Receivable</u>: Accounts Receivable balances were evaluated by receivable type. Eligible credit card receivables were assigned a 95% to 97% recovery and eligible trade receivables were assigned a 90% to 95% recovery, while employee receivables were assigned a 10% to 30% recovery. Other accounts receivable, which primarily include vendor rebate receivables and franchise receivables, were assigned no recovery under the assumption that those amounts would either be set-off against creditors' claim amounts or would be difficult to collect in a liquidation scenario. On a blended basis, a 54% to 57% recovery has been estimated for these accounts receivable.

[C] <u>Inventory</u>: A 60% to 66% recovery has been estimated for the eligible projected inventory balance as of the Liquidation Date, which is comprised of in-transit and on-hand inventory. This level of recovery has been informed by the net orderly liquidation value range contained within an appraisal the Debtors received, adjusted for certain factors including inventory mix and the results of the store liquidation process to-date, while acknowledging the limited timeframe the Debtors may have to complete the liquidation process, including the exit of store leases. The estimated recovery assumes that equity bids are received from liquidators and that the recoveries are net of store related liquidation expenses including items such as payroll and rent.

[D] <u>Prepaid Expenses & Other Current Assets</u>: Prepaid Expenses & Other Current Assets consist of prepaid items that will likely be largely unrecoverable in the event of a liquidation including prepaid IT, marketing, rent, insurance, taxes and other expenses that are amortized over the applicable license, rental, or other period. These items have been examined individually and recoveries were deemed to largely be limited to prepaid insurance premiums following the 3-

month Chapter 11 orderly liquidation. On a blended basis, a 1% to 5% recovery has been estimated for these prepaid amounts.

[E] <u>Tax Receivable</u>: Tax receivable relates to estimated amounts due from the IRS and state tax authorities as the Liquidation Date. A 100% recovery on these tax receivables has been estimated for the low and high scenarios.

[F] <u>Property, Plant and Equipment</u>: The net book value of PP&E consists of leasehold improvements, furniture, fixtures, machinery, equipment, land and buildings.  The Debtors have examined PP&E separately for the stores, manufacturing facilities, corporate and distribution centers. Recovery value from the stores has been informed by the results of the store liquidation process to-date. Recovery value from the manufacturing facilities, corporate and distribution centers is based on a review of the fixed asset registers for each and informed by previous liquidations of similar properties. No recovery has been assigned to the land and building book assets as these assets are not owned by the Debtors and it has been assumed that the sale-leaseback agreement will be rejected and that the land and building owner will retain possession in a liquidation. No recovery has been assigned to leasehold improvements. In total, the implied recovery of PP&E relative to net book value is 3% to 4%.

[G] <u>Investment in Subsidiaries</u>: Investment in Subsidiaries reflects the Debtors' investment in Anagram Holdings, LLC, which was assumed to have no value in a hypothetical liquidation scenario, when considering Anagram Holdings, LLC and its subsidiaries' liabilities and loss of affiliate sales due to the Debtors' liquidation.

[H] <u>Goodwill</u>: No value has been assigned to the value of the Debtors' goodwill in a liquidation.

[I] <u>Other Intangible Assets</u>: Based on a review of the Debtors' intangible assets, the trade names (along with their associated logos and URL's) were deemed to have value. The value of trade names was estimated by examining actual trade name transactions that resulted from the liquidations of other retailers. The value of the trade names was estimated to be valued at $16 million to $22 million. It is assumed that other intellectual property, including copyrights, patents and customer lists would be included in the transaction. On a blended basis, the recovery is approximately 12% to 16% of net book value.

[J] <u>Other Assets</u>: The net book value of Other Assets primarily consists of operating lease right of use assets, as well as prepaid advertising and deposits. Based on a review of the Debtors' lease terms relative to current market rent, the value of leases is estimated to be between $6 to $12 million. Prepaid advertising was determined to have no value. Deposits, which primarily include rent deposits, were similarly deemed to have no value under the assumption that those amounts would be set-off against creditors' claim amounts.

[K] <u>Liquidation Adjustments</u>: Liquidation Adjustments include estate wind down costs associated with a 3-month orderly liquidation in Chapter 11 and a 3-month wind down in Chapter 7. Estate

wind down costs over the 6-month period include corporate and distribution costs, estimated at $40 to $50 million, as well professional fee expenses, estimated at $9 to $12 million. Wind down expenses exclude store-related wind-down expenses, which would be the responsibility of the Liquidator and thus are factored into the recovery rates assigned to Inventory above. Chapter 7 Trustee fees are estimated at between 0.5% to 1.0% of gross distributable proceeds, recognizing that when the Chapter 7 Trustee would be appointed following the 3-month orderly liquidation, the estate's assets would largely consist of cash.

[L] <u>Professional Fee Carve-Out Claims</u>: These claims represent an estimate as of the Liquidation Date for the total accrued and unpaid professional fees funded into the Professional Fee Escrow Account. No provision for success fees has been included in this amount. The Debtors estimate a 100% recovery on these claims.

[M] <u>Prepetition ABL Claims</u>: These claims represent the aggregate principal amount outstanding under the Prepetition ABL Credit Agreement, plus any accrued and unpaid interest and fees as of the Liquidation Date. The Debtors estimate a 100% recovery on these claims.

[N] <u>DIP Term Loan</u>: These claims represent the projected DIP term loan balance as of the Liquidation Date, including accrued and unpaid interest and fees. The Debtors estimate a recovery of 49% to 90% on these claims.

[O] <u>Secured Notes Claims</u>: These claims represent the aggregate principal amount outstanding under the Secured Notes Documents, plus any accrued and unpaid interest and fees as of the Liquidation Date. The Debtors estimate a 0% recovery on these claims.

[P] <u>Chapter 11 Administrative Expense & Priority Claims</u>: These claims include projected 503(b)(9) administrative claims, post-petition administrative expense claims and priority unsecured claims as of the Liquidation Date. 503(b)(9) administrative claims and post-petition administrative expense claims were informed by the Debtors' Revised DIP Budget dated March 16, 2023. Priority unsecured claims were informed by the Debtors' review of claims filed to-date. The Debtors estimate a 0% recovery on these claims.

[Q] <u>General Unsecured Claims</u>: These claims represent the estimated general unsecured claims that will be unpaid as of the Liquidation Date, including the Unsecured Notes claims but excluding Secured Notes deficiency claims. The estimated general unsecured claims amount includes an estimate of lease rejection claims on all stores that do not have above-market leases. The Debtors estimate a 0% recovery on these claims.

**Party City Holdco Inc.**
*Hypothetical Liquidation Analysis & Claims Recoveries*
*$ in millions*

### Summary Recovery Table

| Claim / Interest | Claim Amt | Plan Recovery | Liquidation Recovery Low | Midpoint | High |
|---|---|---|---|---|---|
| Professional Fee Carve-Out Claims | 17.4 | 100.0% | 100.0% | 100.0% | 100.0% |
| DIP Term Loan | 163.0 | 100.0% | 48.5% | 69.2% | 90.1% |
| Chapter 11 Administrative Expense & Priority Claims | 105.4 | 100.0% | 0.0% | 0.0% | 0.0% |
| Other Secured Claims (Class 1) | - | 100.0% | 100.0% | 100.0% | 100.0% |
| Other Priority Claims (Class 2) | - | 100.0% | 100.0% | 100.0% | 100.0% |
| Prepetition ABL Claims (Class 3) | 386.5 | 100.0% | 100.0% | 100.0% | 100.0% |
| Secured Notes Claims (Class 4)[1] | 911.7 | 3.4% - 14.5% | 0.0% | 0.0% | 0.0% |
| General Unsecured Claims (Class 5) | 541.3 | TBD | 0.0% | 0.0% | 0.0% |
| Intercompany Claims (Class 6) | TBD | 0.0% | 0.0% | 0.0% | 0.0% |
| Intercompany Interests (Class 7) | TBD | 0.0% | 0.0% | 0.0% | 0.0% |
| Interests in PCHI (Class 8) | TBD | 0.0% | 0.0% | 0.0% | 0.0% |

(1) Plan recovery for Secured Notes Claims includes (a) recovery attributable to the direct distribution of equity (0.3%-0.5%); plus (b) recovery attributable to the value of subscription rights (3.2%-14.0%)

**Party City Holdco Inc.**
*Hypothetical Liquidation Analysis & Claims Recoveries*
*$ in millions*

## Illustrative Liquidation Analysis

| Current Assets | Footnotes | Book Value | Estimated Recovery Value | | | Estimated Recovery % | | |
|---|---|---|---|---|---|---|---|---|
| | | | Low | Midpoint | High | Low | Midpoint | High |
| Cash & Cash Equivalents | [A] | 128.9 | 128.9 | 128.9 | 128.9 | 100.0% | 100.0% | 100.0% |
| Accounts receivable, net | [B] | 62.8 | 34.0 | 34.8 | 35.6 | 54.2% | 55.5% | 56.7% |
| Inventory, net | [C] | 590.7 | 354.4 | 372.1 | 389.8 | 60.0% | 63.0% | 66.0% |
| Prepaid expenses and other current assets | [D] | 35.1 | 0.3 | 1.0 | 1.6 | 0.8% | 2.7% | 4.6% |
| Tax receivable | [E] | 3.1 | 3.1 | 3.1 | 3.1 | 100.0% | 100.0% | 100.0% |
| **Total Current Assets** | | **820.5** | **520.7** | **539.9** | **559.1** | **63.5%** | **65.8%** | **68.1%** |
| | | | | | | | | |
| **Non-Current Assets** | | | | | | | | |
| Property, Plant & Equipment, net | [F] | 221.3 | 7.1 | 8.4 | 9.7 | 3.2% | 3.8% | 4.4% |
| Investment in Subsidiaries | [G] | - | - | - | - | 0.0% | 0.0% | 0.0% |
| Goodwill | [H] | 20.2 | - | - | - | 0.0% | 0.0% | 0.0% |
| Other Intangible Assets, net | [I] | 140.0 | 16.3 | 19.0 | 21.7 | 11.6% | 13.6% | 15.5% |
| Other Assets, net | [J] | 652.7 | 5.8 | 8.7 | 11.7 | 0.9% | 1.3% | 1.8% |
| **Total Non-Current Assets** | | **1,034.1** | **29.2** | **36.1** | **43.0** | **2.8%** | **3.5%** | **4.2%** |
| | | | | | | | | |
| **Total Assets & Recovery Estimate** | | **1,854.6** | **549.9** | **575.9** | **602.1** | **29.6%** | **31.1%** | **32.5%** |

| Liquidation Adjustments | | | Liquidation Adjustment ($) | | | % of Total Recoveries | | |
|---|---|---|---|---|---|---|---|---|
| | | | Low | Midpoint | High | Low | Midpoint | High |
| Estate Wind-down Costs | | | (49.7) | (44.7) | (39.7) | 9.0% | 7.8% | 6.6% |
| Professional Fees | | | (11.7) | (10.2) | (8.7) | 2.1% | 1.8% | 1.4% |
| Chapter 7 Trustee Fees | | | (5.5) | (4.3) | (3.0) | 1.0% | 0.8% | 0.5% |
| **Total Liquidation Adjustments** | [K] | | **(66.9)** | **(59.2)** | **(51.4)** | **12.2%** | **10.3%** | **8.5%** |
| | | | | | | | | |
| **Net Proceeds Available for Distribution to Creditors** | | | **483.0** | **516.7** | **550.7** | | | |

**Party City Holdco Inc.**
*Hypothetical Liquidation Analysis & Claims Recoveries*
*$ in millions*

### Illustrative Claims Recovery

| | Footnotes | Claim Amt | Estimated Recovery Value | | | Estimated Recovery % | | |
|---|---|---|---|---|---|---|---|---|
| | | | Low | Midpoint | High | Low | Midpoint | High |
| **Net Proceeds Available for Distribution to Creditors** | | | **483.0** | **516.7** | **550.7** | | | |
| Professional Fee Carve-Out Claims | [L] | 17.4 | (17.4) | (17.4) | (17.4) | 100.0% | 100.0% | 100.0% |
| **Remaining Amount Available for Distribution** | | | **465.6** | **499.3** | **533.3** | | | |
| Prepetition ABL Claims | [M] | 386.5 | (386.5) | (386.5) | (386.5) | 100.0% | 100.0% | 100.0% |
| **Remaining Amount Available for Distribution** | | | **79.1** | **112.9** | **146.8** | | | |
| DIP Term Loan | [N] | 163.0 | (79.1) | (112.9) | (146.8) | 48.5% | 69.2% | 90.1% |
| **Remaining Amount Available for Distribution** | | | - | - | - | | | |
| Secured Notes Claims | [O] | 911.7 | - | - | - | 0.0% | 0.0% | 0.0% |
| **Remaining Amount Available for Distribution** | | | - | - | - | | | |
| Chapter 11 Administrative Expense & Priority Claims | [P] | 105.4 | - | - | - | 0.0% | 0.0% | 0.0% |
| **Remaining Amount Available for Distribution** | | | - | - | - | | | |
| General Unsecured Claims | [Q] | 541.3 | - | - | - | 0.0% | 0.0% | 0.0% |
| **Remaining Amount Available for Distribution** | | | - | - | - | | | |
| Existing Interests | | - | - | - | - | 0.0% | 0.0% | 0.0% |
| **Remaining Liquidation Proceeds Available for Distribution** | | | - | - | - | | | |